CHAPMAN AND CUTLER LLP
Steven Wilamowsky
1270 Avenue of the Americas
30th Floor
New York, NY 10020-1708
Telephone: 212.655.6000

-and-

Aaron M. Krieger (admitted *pro hac vice*)
111 West Monroe Street
Chicago, IL 60603-4080
Telephone: 312.845.3000

*Proposed Counsel for the Debtor and*
*Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | : Case No. 19-23185 (RDD) |
|  | : |
| Debtor. | : |

--------------------------------------------------------x

## NOTICE OF MOTION OF DEBTOR PURSUANT TO 11 U.S.C. § 365(a), FED. R. BANKR. P. 6006, AND LOCAL RULE 6006-1 TO ASSUME SOFTWARE CONSULTING <u>AGREEMENT WITH END POINT CORPORATION</u>

**PLEASE TAKE NOTICE** that on July 2, 2019, the debtor and debtor in possession (the

"<u>**Debtor**</u>") in the above-captioned case filed the *Motion of Debtor Pursuant to 11 U.S.C. §*

*365(a), Fed. R. Bankr. P. 6006, and Local Rule 6006-1 to Assume Software Consulting*

*Agreement with End Point Corporation* (the "<u>**Motion**</u>," a copy of which is attached hereto).  A

hearing (the "<u>**Hearing**</u>") on the Motion will be held before the Honorable Robert D. Drain of the

---

[1]    The last four digits of the Debtor's taxpayer identification number is 9495.  The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523.  The Debtor also does business as American Medical Collection Agency.

United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy**

**Court**"), in Room 248, 300 Quarropas Street, White Plains, New York 10601, on July 16, 2019,

at 10:00 a.m. (EDT).

    **PLEASE TAKE FURTHER NOTICE** that any responses or objections (each, an

"**Objection**") to the Motion and the relief requested therein shall be in writing, shall conform to

the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District

of New York, and the *Order Granting Debtor's Motion for Order Authorizing the Establishment*

*of Certain Notice, Case Management, and Administrative Procedures* [Doc. No. 31] (the "**Case**

**Management Order**"), shall set forth the basis for the Objection and the specific grounds

therefore, and shall be filed with the Bankruptcy Court electronically in accordance with General

Order M-399 by registered users of the Bankruptcy Court's case filing system (the User's

Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the

official website for the Bankruptcy Court), with a hard copy delivered directly to chambers

pursuant to Local Bankruptcy Rule 9070-1 and served so as to be actually received no later than

July 9, 2019, at 4:00 p.m. (EDT) (the "**Objection Deadline**"), upon the parties on the Service

List (as defined in the Case Management Order).

    **PLEASE TAKE FURTHER NOTICE** that if no Objections are timely filed and served

with respect to the Motion, the Debtor shall, on or after the Objection Deadline, submit to the

Bankruptcy Court an order substantially in the form annexed as **Exhibit A** to the Motion, which

order the Bankruptcy Court may enter with no further notice or opportunity to be heard.

Dated:  July 2, 2019
      New York, New York

                CHAPMAN AND CUTLER LLP
                *Proposed Counsel for the Debtor and*
                *Debtor in Possession*

By:   /s/ Steven Wilamowsky
Steven Wilamowsky
1270 Avenue of the Americas
30th Floor
New York, NY 10020-1708
Telephone: 212.655.6000

-and-

Aaron M. Krieger (admitted *pro hac vice*)
111 West Monroe Street
Chicago, IL 60603-4080
Telephone: 312.845.3000

**Hearing Date and Time: July 16, 2019 at 10:00 a.m. (EDT)**
**Objection Deadline: July 9, 2019 at 4:00 p.m. (EDT)**

CHAPMAN AND CUTLER LLP
Steven Wilamowsky
1270 Avenue of the Americas
30th Floor
New York, NY 10020-1708
Telephone: 212.655.6000

-and-

Aaron M. Krieger (admitted *pro hac vice*)
111 West Monroe Street
Chicago, IL 60603-4080
Telephone: 312.845.3000

*Proposed Counsel for the Debtor and*
*Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re                                    :    Chapter 11
                                         :
Retrieval-Masters Creditors Bureau, Inc.,[2]    :    Case No. 19-23185 (RDD)
                                         :
                    Debtor.              :
--------------------------------------------------------x

### MOTION OF DEBTOR PURSUANT TO 11 U.S.C. § 365(a), FED. R. BANKR. P. 6006, AND LOCAL RULE 6006-1 TO ASSUME SOFTWARE CONSULTING <u>AGREEMENT WITH END POINT CORPORATION</u>

Retrieval-Masters Creditors Bureau, Inc. (the "**<u>Debtor</u>**") respectfully states the following

in support of this motion (the "**<u>Motion</u>**"):[3]

---

[2]    The last four digits of the Debtor's taxpayer identification number is 9495.  The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523. The Debtor also does business as American Medical Collection Agency.

[3]    A detailed description of the Debtor and its business, and the facts and circumstances supporting this Motion and the Debtor's chapter 11 case, are set forth in greater detail in the *Declaration of Russell H. Fuchs Pursuant to Local Bankruptcy Rule 1007-2 and in Support of "First Day" Motions* [Doc. No. 2] (the "**<u>First Day Declaration</u>**"), filed contemporaneously with the Debtor's voluntary petition for relief filed under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**<u>Bankruptcy Code</u>**"), on June 17, 2019 (the "**<u>Petition Date</u>**").  Capitalized terms used but not otherwise defined herein shall have the meaning given to them elsewhere in this Motion or in the First Day Declaration, as applicable.

## Relief Requested

1.      The Debtor seeks entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "**Order**") authorizing the Debtor to assume that certain Software Consulting Contract for Retrieval-Masters, dated as of November 27, 2017 (the "**Agreement**").[4]

2.      In connection with the assumption of the Agreement, the Debtor will cure all amounts owed under the Agreement including $18,750 (the "**Cure Amount**") related to prepetition services.  The Debtor will also pay post-petition amounts in the ordinary course under the Agreement.

## Jurisdiction and Venue

3.      The United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012.  The Debtor confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, Bankruptcy Rules 6004, and rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**").

---

[4]      A copy of the Agreement is annexed as **Exhibit B** hereto.

## Background

6.      The Debtor is a debt and medical receivables collection agency that was founded
in 1977 in New York City.  Over time, the business grew into a thriving agency and, in 1995,
relocated to its current location in Elmsford, New York.

7.      The Debtor has two basic business segments.  The first principally involves
collections from retail consumer debtors of direct mail marketers, among others.  The second
involves the collection of receivables on behalf of clinical diagnostic laboratories, and does
business under the name American Medical Collection Agency.

8.      In March, 2019, the Debtor became aware of a significant IT security breach
involving its servers.  That led to a cascade of events that ultimately necessitated the
commencement of the instant chapter 11 case.  More details regarding these events and the
Debtor's business are set forth in the First Day Declaration.

9.      On the Petition Date, the Debtor filed a voluntary petition for relief under the
Bankruptcy Code.  The Debtor is operating its business and managing its properties as a debtor
in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the
appointment of a trustee or examiner has been made in this chapter 11 case and no official
committees have been appointed or designated.

## The End Point Agreement

10.      The services provided by End Point Corporation ("**End Point**") under the
Agreement are critical to the Debtor's ability to complete programming upgrades to its IT
systems related to and/or arising from the data breach that was the precipitating event preceeding
the instant chapter 11 case.

11.     End Point was first engaged at the end of November 2017 to do application programming on the Debtor's IT system.  These included programming changes involving the Debtor's telephone calling system, system optimization, and nightly mainframe data synchronization.  End Point also began, but did not complete, additional programming that would have enabled to migrate its phone system to a new vendor.

12.     In addition, End Point, working under the direction of the Debtor's pre-petition regulatory counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("**Skadden**"), was responsible for on-going security auditing and updating and assisting Skadden with the Debtor's compliance with breach-related regulatory requirements.  End Point continues to provide programming and network support, which has become increasingly critical given recent and anticipated personnel reductions at the Debtor, which will limit its in-house capabilities.

## Basis for Relief

13.     Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *COR Route 5 Co., LLC v. Penn. Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 378 (2d Cir. 2008).  The Bankruptcy Code does not define the term "executory contract," but the Second Circuit has characterized an executory contract as one "on which performance remains due to some extent on both sides." *E. Air Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992, 998-99 (2d Cir. 1996) (quoting *NLRB v. Bildisco & Bildisco*, 104 S.Ct. 1188, 1194 n.6 (1984)).  The Agreement is an executory contract because both the Debtor and End Point have material performance obligations remaining thereunder.

14.     The "business judgment" test is the standard courts use to decide whether to authorize a debtor's assumption of an executory contract. *Orion Pictures Corp. v. Showtime*

*Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993), *cert. dismissed*, 114 S. Ct. 1418 (1994). The "business judgment" test is not a strict standard, as it only requires a showing that assumption of an executory contract will benefit the debtor's estate. *See Old CarCo LLC*, 406 B.R. 180, 196 (Bankr. S.D.N.Y. 2009) (A debtor's decision to assume an executory contract is a proper exercise of its business judgment if it is "rational" and does not "demonstrate bad faith or whim or caprice"); *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y 1992) (quoting *Smith v. Van Gorkum*, 488 A.2d 858, 872 (Del. 1985)) *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986). Accordingly, courts generally defer to a debtor's business judgment in assuming an executory contract. *See Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996); *Orion Pictures*, 4 F.3d at 1099; *In re Child World, Inc.*, 142 B.R. 87, 89–90 (Bankr. S.D.N.Y. 1992).

15.     The Debtor is exercising its sound business judgment by assuming the Agreement at this time as End Point is uniquely able to support the Debtor as it addresses, among other things, programming and related work on the Debtor's IT systems related to and/or arising from the data breach.

16.     Pursuant to section 365(b) of the Bankruptcy Code, in order for a debtor to assume an executory contract, the debtor must cure any defaults under the contract or provide adequate assurance that it promptly will cure such defaults. *See* 11 U.S.C. § 365(b)(1)(A). If there has been a default, the debtor also must provide adequate assurance of future performance under the contract. *See* 11 U.S.C. § 365(b)(1)(C). In accordance with section 365 of the

Bankruptcy Code, the Debtor has agreed to cure all amounts owing to End Point under the Agreement.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

17.      To successfully implement the foregoing, the Debtor requests that the Bankruptcy Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Reservation of Rights

18.      Nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as: (a) an admission as to the validity of any particular claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtor's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtor that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtor expressly reserves its rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

**Motion Practice**

19.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Motion.  Accordingly, the Debtor submits that this Motion satisfies Local Rule 9013-1(a).

**Notice**

20.     The Debtor will provide notice of this Application in a manner compliant with the Court's *Order Granting Debtor's Motion for Order Authorizing the Establishment of Certain Notice, Case Management, and Administrative Procedures* [Doc. No. 31], dated June 24, 2019.

**No Prior Request**

21.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtor respectfully requests that the Bankruptcy Court enter the

Order granting the relief requested herein and such other relief as the Bankruptcy Court deems

appropriate under the circumstances.

Dated:  July 2, 2019
        New York, New York

CHAPMAN AND CUTLER LLP
*Proposed Counsel for the Debtor and*
*Debtor in Possession*


By:   /s/ Steven Wilamowsky
      Steven Wilamowsky
      1270 Avenue of the Americas
      30th Floor
      New York, NY 10020-1708
      Telephone: 212.655.6000

      -and-

      Aaron M. Krieger (admitted *pro hac vice*)
      111 West Monroe Street
      Chicago, IL 60603-4080
      Telephone: 312.845.3000

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
Retrieval-Masters Creditors Bureau, Inc.,[1]       :    Case No. No. 19-23185 (RDD)
                                                   :
                            Debtor.                :
-----------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 365(a), FED. R. BANKR. P. 6006, AND LOCAL RULE 6006-1 AUTHORIZING THE DEBTOR TO ASSUME SOFTWARE CONSULTING AGREEMENT WITH END POINT CORPORATION

Upon the motion (the "**Motion**")[2] of the debtor and debtor in possession (the "**Debtor**") in the above-captioned case for entry of an order (this "**Order**") authorizing the Debtor to assume that certain Software Consulting Contract for Retrieval-Masters, dated as of November 27, 2017 (the "**Agreement**"); all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York, dated January 31, 2012; and that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. §157(b); and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support

---

[1]    The last four digits of the Debtor's taxpayer identification number is 9495.  The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523. The Debtor also does business as American Medical Collection Agency.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

of the relief requested therein at a hearing before this Court (the "**Hearing**"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before this

Court; and after due deliberation and sufficient cause appearing therefor, it is ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The assumption of the Agreement is authorized and approved pursuant to section

365(a) of the Bankruptcy Code, Bankruptcy Rule 6006, and Local Rule 6006-1, effective as of

the Petition Date.

3.      The Debtor is authorized and directed to pay the Cure Amount within forty-five

(45) days after the date of entry of this Order.

4.      In addition to the Cure Amount, the Debtor is authorized, but not directed, to pay all

amounts payable to End Point, in each case to the extent payable pursuant to, and on the terms and

conditions set forth in, the Agreement, free and clear of all liens, claims and encumbrances.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient

notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are

satisfied by such notice.

6.      Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order

are immediately effective and enforceable upon its entry.

7.      In accordance with this Order and any other order of this Court, each of the

financial institutions at which the Debtor maintains its accounts relating to prepetition or

postpetition obligations that the Debtor is authorized to pay pursuant to this Order is directed to

honor checks presented for payment and all fund transfer requests made by the Debtor related to

such obligations to the extent that sufficient funds are on deposit in such accounts.

8.      The Debtor is authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Motion.

9.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2019
        White Plains, New York

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT A**

**Agreement**

# End Point

## Software Consulting Contract for Retrieval-Masters, 11/27/2017

End Point Corporation ("End Point") located at 304 Park Avenue S. Suite 214, New York, NY 10010, agrees under the following conditions to provide services for Retrieval-Masters Creditors Bureau, Inc. ("Client") located at 4 Westchester Plaza, Suite 110, Elmsford, NY 10523, for software development, support, and related consulting work.

## Work Hours and Reporting:

All work performed by End Point shall be billed or reported on a "time and materials" basis, with billing in ¼ hour increments. Work will be done based on good-faith estimates provided to The Client. It is understood that the nature of custom software development precludes having exact foreknowledge of how long proposed work will take, but End Point employees will make frequent reports to the Client during the course of a project with the goal of keeping the client frequently informed throughout the engagement.

The Client has the option of changing the direction of work at any time, but a new set of estimates may be provided at that time if the work is different than initially intended. No new work will be undertaken without the express approval of the Client.

## Prepaid Fee Schedule:

Fee rates are for prepaid blocks of time before work begins:

- 1-119 hours $150/hour
- 120+ hours $125/hour

With approval, hours may be billed in arrears net-15 at $160/hour.

# Total Initial Purchase:

120 hours, invoiced under separate cover

# Prepaid Terms:

- End Point will invoice The Client an initial block of 120 hours upon the signing of the contract
- End Point will notify the Client when approximately 75% of the time purchased is used up, or upon the conclusion of a specific engagement, to request if another block of time should be purchased.
- Invoices for pre-purchasing new blocks of time will then be subsequently submitted to the Client, and all terms as stated within this section shall continue to be applied.
- For prepaid blocks of time, the Client will pay End Point immediately upon receipt of any or all invoices
- Delay of more than 15 days in payment from the date of submission, will result in a surcharge of the difference between prepayment rate and End Point's standard rate of $150/hr.
- End Point reserves the right to commence work upon receiving payment and is not required to do so beforehand
- End Point has the right to stop work at any time, if payments have not been received within the terms stated here within this contract.
- End Point will undertake the work requested by The Client up to the total number of hours paid for.
- When each purchased block of paid time is used up, End Point reserves the right to continue work only upon payment of each new block of time, unless otherwise mutually agreed upon by End Point and the Client in writing.
- End Point will not undertake any work beyond the total of any block of time purchased by the Client or beyond the estimate without the expressed approval of the Client.
- Any work outside of the scope of a project that is performed upon approval of the Client will be invoiced at the agreed upon rate as stipulated within this contract.
- The Client may purchase additional hours at any time through the duration of this contract, at the rate scheduled stipulated within this contract.

## Relationship is "At Will"

The Client may cease using End Point's services, and End Point may discontinue providing services, and at any time and for any reason.

The client is still responsible for making payment on any time used up to the discontinuation date as provided in writing by either party.

If there are any hours paid for that are not used, and are not needed to be used towards concluding the engagement, as agreed upon between the parties, than the amount of unused hours will be refunded minus 20% charge on the hours that were used (to reflect a true billing rate of $150 per hour on the hours used).

## Contract Duration

The length of the contract shall extend one year from the signing date of this contract as noted below or the life of the initial block of hours purchased (as noted above), whichever concludes last.

The terms of this contract may be changed upon written mutual agreement between the Client and End Point.

## Rate Guarantee

End Point will hold steady its rates through the duration of this contract at which time End Point reserves the right to adjust its rates upon negotiation with The Client.

## Work Product

All Work Product (including any deliverables) created or developed by End Point in the performance of the Services for the Client under this Contract ("Work Product") shall be the sole and exclusive property of the Client. End Point hereby conveys, transfers, and assigns to the Client all right, title and interest, including all intellectual property rights in and to, such Work Product effective upon creation and without further consideration, whether or not such Work Product is deemed a "work made for hire" under the U.S. Copyright Act of 1976. End Point shall promptly disclose any such

Work Product to The Client and give The Client, or its designees, all assistance reasonably required to perfect the Client's rights hereunder.

## End Point Materials

Notwithstanding the foregoing provision "Work Product", The Client's ownership rights do not apply or extend to End Point's tools, reports, applications, information, data and other materials owned or licensed by End Point prior to the commencement or independent of the Services performed for The Client under this Contract (collectively, the "End Point Materials"). As between the Client and End Point, all rights not expressly granted to the Client in this Contract are reserved to End Point. Notwithstanding the foregoing, End Point hereby grants to the Client a perpetual, irrevocable, worldwide, fully-paid, royalty-free, nonexclusive license to access, copy, modify, use and distribute such End Point Materials to the extent required to use the Work Product.

## Ownership and Confidentiality

The Client understands that End Point specializes in working with and extending Open Source software and that programming done for the Client will add to the base of experience that End Point has in developing software. Generally useful code that End Point develops in the course of its work for the Client may be adapted for use on Open Source projects and/or on other projects that End Point works on.

Nevertheless, under this agreement End Point will keep confidential any programs, source code, or business data that it develops or has access to which is of a highly specific nature to the Client, including code created uniquely for the client or for the purpose of the website and/or the Client.

## No License Fee or Use Restrictions

In no case will either party to this contract require a license fee for, or make any restrictions on the use of, any copyright or patent that may apply to software, designs, or other intellectual property, whether developed under this contract, or in pre-existing form from past projects, or from Open Source or other 3rd parties. The only benefit shall be payment for services rendered and use of software and other intellectual property created. This clause will survive the term of this contract.

# Patent Infringement Liability Disclaimed

It is impossible for any software developer to be certain that no patents apply to software created, or to business methods implemented. Because a demonstration of "willful infringement" can increase penalties, it is unwise for a developer to proactively review software patents filed or granted. Each party to this contract disclaims all liability for patent infringement claims made against the other. This clause will survive the term of this contract.

# Security

End Point strongly emphasizes the security and confidentiality of all our clients' and our own internal data and systems. We maintain secure systems by routinely updating software, reviewing access controls, and practicing "defense in depth" including firewalls, public-key cryptography, and strong passwords. Important usernames, passwords, and other similar confidential access information that the Client provides to End Point will be stored and transmitted in encrypted form, separate from our other customers' information, and accessible only to those with a need for it. (We do maintain a company intranet that all employees have full access to, but we do not store confidential access information there.)

IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT, EVEN IF THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ENTIRE LIABILITY OF END POINT CORPORATION UNDER ANY PROVISION OF THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNTS PAID TO END POINT CORPORATION UNDER THIS AGREEMENT.

The undersigned, being authorized to enter into contracts on behalf of the respective companies, hereby agree to these terms.

Retrieval-Masters

End Point Corporation

_____
Jeffrey Wollman, CFO

_____
Rick Peltzman, CEO

_____
CFO
Title

_____
CEO
Title

_____
11/21/17
Date

_____
11/21/17
Date

_____
Signature

_____
Signature