**ALSTON & BIRD LLP**
William Hao
90 Park Avenue
New York, NY 10016
(P) 212-210-9400
(F) 212-210-9444
Email: william.hao@alston.com

-and-

William S. Sugden (admitted *pro hac vice*)
One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
(P) 404-881-7000
(F) 404-253-8235
Email: will.sugden@alston.com

*Attorneys for Optum360, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | Case No. 19-23185 (RDD) |
| Debtor. | |

**JOINDER OF OPTUM360, LLC TO STATE
OF INDIANA'S MOTION TO CONVERT TO CHAPTER 7,
OR, IN THE ALTERNATIVE, APPOINT A CHAPTER 11 TRUSTEE**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

Optum360, LLC ("**Optum**")[2] joins the *State of Indiana's Motion to Convert to*

*Chapter 7, or in the Alternative, Appoint a Chapter 11 Trustee* (the "**Motion to Convert**,"

---

[1] The last four digits of the Debtor's taxpayer identification number is 9495. The location of the Debtor's service address for the purpose of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523. The Debtor also does business as American Medical Collection Agency.

[2] Quest Diagnostics Inc. ("**Quest**") and the Debtor were parties to a Service Agreement dated December 25, 2014, which was subsequently assigned by Quest to Optum (the "**Service**

Docket No. 52), as well as the informal requests from Attorneys General for the States of Tennessee, Ohio, Washington, Michigan, Connecticut, Nevada, and Texas. *See* Docket No. 60, Exhibit 1. Optum intends to work with the State of Indiana to set a hearing date for the Motion to Convert upon the filing of this Joinder. In further support, Optum states as follows:

1. The normal community of interests that attend a chapter 11 case are absent here. Nearly a month after filing for bankruptcy relief, neither this Court nor parties in interest have basic visibility into this Debtor's financial condition. Ordinarily such visibility comes from, among other things, the filing of a DIP financing motion and budget. No such motion has been presented, presumably because Mr. Russell Fuchs, the Debtor's CEO, founder, and sole equity holder, has been funding this case since filing.[3] While a creditors committee has been organized (*see* Docket No. 44), the three-member committee has not retained counsel and the Debtor filed a motion to assume the executory contract of one of its members (End Point Corp.) on the same day that the committee was appointed (*see* Docket No. 45).[4] Similarly, the Debtor has no prospect of "reorganizing." The Debtor has admitted that it has experienced a "severe drop-off in its business" as a result of the

---

**Agreement**"). Under the Service Agreement, the Debtor collected debts owed to Quest by Quest customers. To enable such collection efforts, Quest provided the Debtor customer information (the "**Data**"). On October 10, 2016, Quest assigned its rights under the Services Agreement to Optum.

[3] Debtor's counsel stated at the first day hearing that it anticipated filing a DIP financing motion where Mr. Fuchs would serve as the DIP lender. To date, no such motion has been filed.

[4] It is unclear if the Debtor disclosed to the U.S. Trustee prior to committee formation that it intended to assume the End Point contract, whether End Point will resign from the committee after assumption (which is an uncontested matter on the July 16 hearing agenda), whether the U.S. Trustee would have appointed a two member committee had End Point not sought to sit because its contract was subject to assumption, or whether the Debtor delayed filing the assumption motion until immediately after appointment of the committee (the Debtor filed the assumption motion approximately 2.5 hours after the committee was appointed).

data breach. *See Declaration of Russell H. Fuchs Pursuant to Local Bankruptcy Rule 1007-2 and in Support of "First Day" Motions* (the "**Fuchs Declaration**"), Docket No. 2 at 6, ¶ 17.  In addition, there appears to be no "brand equity" or other source of value to be harvested as in a standard chapter 11 case.  As Mr. Fuchs acknowledges, the Debtor's goal in this case is to "wind-up … its business." *Id*. at 8, ¶ 21.

2. The material issue in this case is the data breach that the Debtor suffered and ensuring that the Debtor's response to that breach is appropriate and sufficient to protect third parties that were injured by the Debtor's breach.  That includes, among other things: cooperating with regulators; working with private parties, including Optum, to ensure they have the requisite information to meet any obligations that may exist and that Debtor has been unable to meet; providing the Data to Optum and others; and taking *all* steps required to ensure that any Data is secured prospectively (to the satisfaction of Optum and other involved third parties) to protect against additional data breaches.  Notably, these issues are not only of central concern to Optum and other involved third parties, they should also be of paramount interest to the Debtor's estate.

3. By filing this case under chapter 11, this Court and parties in interest are forced to address whether current management is best positioned to manage the Debtor's response to the data breach as a debtor-in-possession.  Or, alternatively, will incumbent management's historic entanglement with the Debtor interfere with the critical steps this Debtor needs to take to address the data breach properly?

4. Since the Debtor disclosed the security breach – prior to the Petition Date – Optum has attempted to work with the Debtor to, among other things, recover the Data and to obtain sufficient assurances from the Debtor that the Data is secured and not vulnerable

- 3 -

to another breach.  To date, however, the Debtor has only provided baseline statements and assurances, but has not allowed Optum to adequately verify those statements and assurances.  Since the Petition Date, these issues have become increasingly pressing because, as the Debtor disclosed in the Fuchs Declaration, the Debtor has engaged in significant layoffs and is in dire financial distress.  *See* Fuchs Declaration 6-7, ¶¶ 17-20.  Indeed, since the June 21 hearing, Optum has repeatedly attempted to work with the Debtor to achieve the necessary goals to advance this case.  Current management's response to Optum is similar to what the Indiana Attorney General discloses in the Motion to Convert.  Among other things:

- The Debtor refuses to permit Optum's data security experts to conduct an on-site inspection, which will better allow these experts to assess Data security.

- The Debtor is refusing to transfer a copy of the Data – Quest's Data, *not* the Debtor's Data – in a usable and understandable format.

- The Debtor previously committed to work with Optum to prepare and send a required notice to the Office of Civil Rights (the "**OCR Notice**").  Despite its commitments, the Debtor did not provide the clarifying information requested and refused to file the OCR Notice itself.  Optum was forced to take responsibility and filed the OCR Notice.

- Upon information and belief, the Debtor has collected in excess of $500,000 of Quest's receivables that it has not remitted to Quest as required by its contractual obligations.  Remittances of such collections by a collection agency is ordinary course conduct and should not need to be raised with this Court.

5. Optum has attempted to induce the Debtor to take the basic steps to satisfy its obligations, but the Debtor has demanded that Optum waive valid setoff rights with respect to several hundred thousand dollars of payables before the Debtor will consent to any turnover of Data.  However inappropriate such a *quid pro quo* might be in these circumstances, Optum has nonetheless offered to waive its setoff rights *provided that the*

- 4 -

*Debtor takes the necessary steps to ensure Data security going forward and Data transfer to Optum's satisfaction.* Despite that, the Debtor has only offered basic, vague and unverified assurances regarding Data security and, thus far, has not transferred a copy of Quest's Data. Indeed, as detailed above, the Debtor is provoking a number of unnecessary disputes with Optum and others related to these issues that is resulting in unnecessary delay and increased costs to the Debtor and others.

6.   Based on the Debtor's conduct to date, and as reinforced by the State of Indiana's recent disclosures, Optum is forced to conclude that displacing current management in favor of an independent fiduciary is in the best interests of this Debtor's estate and that otherwise ample "cause" exists for such relief. *See* 11 U.S.C. §§ 1104(a)(1), (a)(2); 1112(b)(1). Indeed, Optum submits that the record in this case should permit the Court to grant the relief in the Motion to Convert without the need for a further evidentiary record. The basis for this includes, among other things, the Debtor's efforts to attempt to enjoin core police and regulatory powers of State regulators (*see* Docket No. 3), the Debtor's admission that there is no reorganizational purpose to this case and it is, instead, driven by the need to "wind-up" the Debtor's business (*Fuchs Declaration* at 8, ¶ 21), and the continual losses that the Debtor inevitably suffers because of the "severe drop-off in its business" as a result of the data breach. *Id.* at 6, ¶ 17; *see* 11 U.S.C. § 1112(b)(4)(A), (B). Should the Court determine that it is appropriate to develop a further evidentiary record, Optum stands ready to do so and requests that the Court establish a schedule that permits prompt resolution of the Motion to Convert and this joinder.

7.   Optum joins the Motion to Convert in all respects. Optum believes that the more appropriate path forward is conversion of this case to chapter 7, which will likely

reduce the administrative costs of this case, more directly focus attention on the essential and emergent issues of Data transfer and security, and provide the statutory directive not to attempt a "reorganization" of the Debtor's business. *See* 11 U.S.C. § 704(a). However, Optum supports the appointment of a chapter 11 trustee in the alternative.

**WHEREFORE**, Optum respectfully joins the Motion to Convert and requests that the Court enter an order converting this bankruptcy case to a case under chapter 7 of the Bankruptcy Code, or in the alternative, appointing a chapter 11 trustee.

Dated: July 15, 2019
New York, New York

Respectfully submitted,

/s/ William Hao
William Hao
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400
Email: william.hao@alston.com

William S. Sugden (admitted *pro hac vice*)
One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
(P) 404-881-7000
(F) 404-253-8235
Email: will.sugden@alston.com

*Attorneys for Optum360, LLC*

## **CERTIFICATE OF SERVICE**

      I, William Hao, hereby certify that on this day, I caused to be served true and correct copies of the foregoing to be served on all parties who are scheduled to receive notice through the Court's CM/ECF system.

Dated: July 15, 2019.                                    /s/ William Hao
                                                                             William Hao