SIDLEY AUSTIN LLP
Jessica C.K. Boelter
William E. Curtin
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile:  (212) 839-5599
jboelter@sidley.com
wcurtin@sidley.com

*Counsel for Quest Diagnostics Incorporated*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | Case No. 19-23185 (RDD) |
| Debtor. | |

**JOINDER OF QUEST DIAGNOSTICS INCORPORATED TO THE STATE OF
INDIANA'S MOTION TO CONVERT TO CHAPTER 7 OR, IN THE ALTERNATIVE,
<u>APPOINT A CHAPTER 11 TRUSTEE</u>**

Quest Diagnostics Incorporated ("<u>Quest</u>") respectfully joins (the "<u>Joinder</u>") the State of Indiana's Motion to Convert to Chapter 7, or in the Alternative, Appoint a Chapter 11 Trustee (the "<u>Motion to Convert</u>," Docket No. 52), as well as the informal requests from Attorneys General for the States of Tennessee, Ohio, Washington, Michigan, Connecticut, Nevada, Texas, New York, and Kansas (the "<u>Statements in Support</u>," Docket No. 60, Exhibit 1 and Docket No. 69, Exhibit 1) filed in the chapter 11 case of Retrieval-Masters Creditors Bureau, Inc. dba American Medical Collection Agency (the "<u>Debtor</u>" or "<u>AMCA</u>"). Quest does not take a position as to whether this chapter 11 case should be converted to chapter 7 or whether the Court

---

[1] The last four digits of the Debtor's taxpayer identification number are 9495.  The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523.  The Debtor also does business as American Medical Collection Agency.

1

should direct the appointment of a chapter 11 trustee. In support of the Joinder, Quest respectfully states as follows:

**FACTS**

1.  Quest is one of the world's largest independent diagnostic testing companies, annually serving one in three adult Americans and half the physicians and hospitals in the United States.

2.  The Debtor is a contracted billing collections vendor to a number of entities, including Optum360, LLC ("Optum"). Optum, in turn, is Quest's revenue management services provider. As part of the revenue management services it provides to Quest, Optum conducts collection services related to Quest patient accounts and refers certain unpaid bills to collection subcontractors such as AMCA. Quest patient account information (the "Data") was provided to AMCA for these purposes.[2]

3.  As discussed extensively at the First Day Hearing, the Debtor has reported that it experienced a data security incident in which an unauthorized user had access to AMCA's system between August 1, 2018 and March 30, 2019 (the "Incident").

4.  On May 14, 2019, the Debtor informed Optum and Quest of the Incident. Optum and Quest worked to determine what happened and what information was potentially affected as a result, and Optum retained a forensic expert to investigate the Incident. Optum and Quest ceased using the Debtor for collection services. On June 17, 2019, the Debtor filed its petition under chapter 11 of the Bankruptcy Code.

---

[2] Before Optum took over Quest's revenue management services, Quest and the Debtor were parties to a Service Agreement dated December 25, 2014 (the "Service Agreement"). On or about October 10, 2016, Quest severed its direct contractual relationship with AMCA, and the Service Agreement was assigned to Optum. Optum took on the assigned contract and has continued to contract with AMCA since that time to provide services to Quest.

5.    The Debtor has reduced its staff from 113 employees to just 25,[3] which the Debtor admits is creating a strain on its ability to conduct its affairs.[4]

6.    On July 10, 2019, the State of Indiana filed the Motion to Convert, citing the Debtor's lack of intent and inability to reorganize and its lack of transparency in dealing with the fallout from the Incident. *See* Motion to Convert, ¶¶ 5, 7-12, 14, 15. On July 12, 2019 and July 15, 2019, the State of Indiana filed informal letters in support of the Motion to Convert from the Attorneys General for the States of Tennessee, Ohio, Washington, Michigan, Connecticut, Nevada, Texas, New York, and Kansas. *See* Statements in Support, Ex. 1.

## JURISDICTION

7.    This Court has jurisdiction over the Motion to Convert pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion to Convert is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in the Motion to Convert is 11 U.S.C. §§ 1104(a) and 1112(b).

## ARGUMENT

8.    Since learning of the Incident, Quest and Optum have worked to obtain information from AMCA. In furtherance of the investigation into the matter, Optum has, among other things: sought access to the Debtor's systems to independently assess the environment, access which the Debtor has not fully granted; attempted to work with the Debtor directly to recover the Data; and sought to obtain assurances from the Debtor that the Data will be maintained securely on an ongoing basis.

---

[3] *See* Declaration of Russell H. Fuchs Pursuant to Local Bankruptcy Rule 1007-2 and in Support of "First Day" Motions, ECF No. 2, ¶ 20.

[4] Debtor's Motion Pursuant to Section 105(a) of the Bankruptcy Code: (A) for Order Authorizing and Approving Procedures for Managing Governmental Requests and/or Demands for Information; and (B) for an Emergency Order Enjoining Related Governmental Action Pending Court's Consideration of Such Procedures, and Granting Related Relief, ECF No. 3, ¶ 2.

3

9. Unfortunately, Optum has informed Quest that the response from the Debtor's current management has been inadequate. Optum reports that the Debtor 1) refuses to permit Optum's experts to conduct an on-site data security inspection, 2) refuses to transfer a complete copy of the Data in a usable format to Optum and 3) agreed to provide but then failed to complete notice to the U.S. Department of Health and Human Service's Office for Civil Rights. In addition, upon information and belief, the Debtor has collected in excess of $500,000 of Quest's receivables in the ordinary course of its business, but has not remitted any of these non-Debtor funds to Quest.

10. Due to the Debtor's current financial and procedural posture, coupled with its inability or unwillingness to provide the cooperation and transparency that is incumbent upon debtors-in-possession, Quest submits that the expeditious appointment of a responsible, independent fiduciary, whether it be a chapter 11 or a chapter 7 trustee, is required in this case. Quest does not, however, take a position as to whether this chapter 11 case should be converted to chapter 7 or whether the Court should direct the appointment of a chapter 11 trustee.

## **CONCLUSION**

WHEREFORE, Quest respectfully requests that this Court enter an order either (1) converting the Debtor's chapter 11 case to chapter 7 or (2) directing the United States Trustee to appoint a chapter 11 trustee, and grant such other and further relief as the Court deems just and proper.

Dated: July 15, 2019
      New York, New York

SIDLEY AUSTIN LLP

/s/ Jessica C.K. Boelter_____
Jessica C. K. Boelter
William E. Curtin
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
jboelter@sidley.com
wcurtin@sidley.com

*Counsel for Quest Diagnostics Incorporated*