UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

In re                                          :    Chapter 11
                                               :
Retrieval-Masters Creditors Bureau, Inc.,[1]   :    Case No. No. 19-23185 (RDD)
                                               :
                Debtor.                        :
---------------------------------------------------------x

## ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, AND 507: (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED SUPERPRIORITY POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS; (III)AUTHORIZING USE OF CASH COLLATERAL; (IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE AUTOMATIC STAY; AND (VII) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the debtor and debtor in possession (the "**Debtor**") in the above-captioned case pursuant to sections 105, 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2 of the Local Bankruptcy Rules (the "**Local Rules**") for the United States Bankruptcy Court for the Southern District of New York (this "**Court**"), requesting, among other things:

(1)    authorization for the Debtor to obtain postpetition financing in the form of a delayed draw secured promissory note, a copy of which is attached hereto as **Exhibit 1**, together with all agreements necessary to be entered into in connection therewith (as amended, supplemented or otherwise modified from time to time in accordance with the terms and conditions set forth herein, the "**DIP Note**"), by and among the Debtor and Russell H. Fuchs, as

---

[1]    The last four digits of the Debtor's taxpayer identification number is 9495.  The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523. The Debtor also does business as American Medical Collection Agency.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

the lender party thereto (the **"DIP Lender"**), in the maximum aggregate principal amount of

$1,000,000.00  (**"DIP Loan Facility"**);

(2)     authorization for the Debtor to execute, deliver and enter into the DIP Note and to

perform all of its respective obligations thereunder and such other and further acts as may be

required in connection with the DIP Note;

(3)     authorization for the Debtor to pay all amounts, obligations and liabilities owing

or payable to the DIP Lender under the DIP Loan Facility pursuant to the DIP Note, including,

without limitation, all "Obligations" as defined in the DIP Note (the **"DIP Obligations"**);

(4)     authorization for the Debtor to grant superpriority administrative claim status,

pursuant to section 364(c)(1) of the Bankruptcy Code, to the DIP Lender, for the benefit of the

DIP Lender, in respect of all DIP Obligations, subject to the Carve Out (as defined herein);

(5)     authorization for the Debtor to provide adequate protection to the DIP Lender to

the extent of the diminution in value due to the sale, use, or lease of the Prepetition Collateral,

including Cash Collateral (as defined in this Order);

(6)      authorization for the Debtor to use Cash Collateral and all other Prepetition

Collateral in which the Prepetition Lender (as defined herein) has an interest as consented to by

the Prepetition Lender and in accordance with this Order;

(7)     the modification of the automatic stay imposed by section 362 of the Bankruptcy

Code (as defined herein) to the extent necessary to implement and effectuate the terms and

provisions of this Order to the extent hereinafter set forth; and

(8)     related relief.

And due and appropriate notice of the Motion, the relief requested therein and in this

Order and the Hearing, as defined below (the **"Notice"**) being provided; and the opportunity for

a hearing on the Motion having been appropriate and no other notice being needed to be

provided; and upon the objection to the Motion filed by the State of Indiana [doc. no. 92]; and a

joinder to such objection having been filed by the State of Texas [doc. no. 97]; and a limited

objection (subsequently withdrawn on the record of the Hearing) having been filed by Conduent

State & Local Solutions, LLC; and upon the Debtor's reply to the foregoing objections; and the

hearing on the Motion having been held by this Court on August 8, 2019 (the "**Hearing**"); and

upon the record of, and representations made at the Hearing, including the record made by the

Debtor in, among other things, the Motion, the *Declaration of Russell H. Fuchs Pursuant to*

*Local Bankruptcy Rule 1007-2 and in Support of "First Day" Motions* [Doc. No. 2] (the "**First**

**Day Declaration**") and any exhibits thereto, the filings and pleadings in the above-captioned

chapter 11 case (the **"Case"**), and the proffered testimony at the Hearing; and after due

deliberation, the Court having found and concluded that the relief requested in the Motion and

granted herein is fair and reasonable and is in the best interests of the Debtor, its estate, its

stakeholders and other parties in interest, represents a sound exercise of the Debtor's business

judgment and is essential for the continued operation/winddown of the Debtor as set forth at the

Hearing; and all objections to the relief requested in the Motion and this Order having been

withdrawn, resolved as provided herein or overruled by the Court; and after due deliberation and

sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW:**

      A.     <u>Petition</u>. On June 17, 2019 (the **"Petition Date"**), the Debtor filed a voluntary

petition (the **"Petition"**) under chapter 11 of the Bankruptcy Code.  The Debtor continues to

operate its businesses and manage its properties as a debtor-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this Case.

B.    <u>Jurisdiction and Venue</u>. This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 9013 and 9014 and Local Rules 2002-1, 4001-2, 9006-1, 9013-1, 9014-1 and 9014-2.

C.    <u>Notice</u>. The Notice was given in the manner described in the Motion and in the affidavits and/or certificates of service on file in this Case.  The Notice given by the Debtor of the Motion, the Hearing, and the relief granted under this Order constitutes due and sufficient notice thereof and complies with Bankruptcy Rule 4001.

D.    <u>Findings Regarding the Postpetition Financing</u>.

(i)    <u>Postpetition Financing</u>. The Debtor has requested from the DIP Lender, and the DIP Lender is willing, subject to the terms of this Order, to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in this Order and the DIP Note, respectively.

(ii)    <u>Need for Postpetition Financing</u>.  The Debtor does not have sufficient liquidity, including cash collateral, to administer its case without the financing requested in the Motion.  The Debtor's ability to pay its employees, vendors, and professionals is essential to responsibly administer this chapter 11 case for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient capital and liquidity through the proposed postpetition financing arrangement with the DIP Lender as set forth in this Order and the DIP Note, as

applicable, is vital to responsibly administer this chapter 11 case. Accordingly, the Debtor has

an immediate need to obtain the postpetition financing.

        (iii)    <u>No Credit Available on More Favorable Terms</u>. The Debtor is unable to

procure financing in the form of unsecured credit allowable as an administrative expense under

sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code. The Debtor has been unable to

procure the necessary financing on terms more favorable, taken as a whole, than the financing

offered by the DIP Lender pursuant to the DIP Note. After considering all alternatives, the

Debtor has properly concluded, in the exercise of its sound business judgment, that the DIP Loan

Facility represents the best financing available to it at this time, and is in the best interests of all

of its stakeholders.

        (iv)    <u>Business Judgment and Good Faith Pursuant to section 364(e)</u>. Based

upon the pleadings and proceedings of record in this Case: (a) the terms of the DIP Note and this

Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for

secured financing to the Debtor, reflect the Debtor's exercise of its prudent business judgment

consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair

consideration; and (b) the terms and conditions of the DIP Note and this Order have been

negotiated in good faith and at arms' length by and among the Debtor, through its independent

director, and the DIP Lender. Any credit extended, loans made and other financial

accommodations extended to the Debtor by the DIP Lender, including, without limitation,

pursuant to this Order, have been extended, issued or made, as the case may be, in "good faith"

within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the

protections offered by Bankruptcy Code section 364(e), and the DIP Loan Facility, the DIP Liens

and the DIP Loan Facility Superpriority Claim shall be entitled to the full protection of

- 5 -

Bankruptcy Code section 364(e) in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(v)     Sections 506(c) and 552(b).  As a material inducement to the DIP Lender to agree to provide the DIP Loan Facility and its agreement to subordinate its liens and superpriority claims to the Carve Out to the extent set forth herein, and in exchange for: (a) the DIP Lender's willingness to provide the DIP Loan Facility; and (b) the consensual use of Cash Collateral in accordance with this Order, each of the DIP Lender and the Prepetition Lender are entitled to receive, (1) a waiver of any equities of the case exceptions or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, and (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code subject to the terms hereof (which waiver shall be without prejudice to the contention of the DIP Lender that section 506(c) of the Bankruptcy Code does not apply to claims arising under the DIP Loan Facility).

(vi)     Good Cause.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to: (1) minimize disruption to the Debtor's case administration efforts; (2) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's stakeholders; and (3) avoid harm to the Debtor, its creditors, its employees, and its assets.

(vii)     Adequate Protection.  The Prepetition Lender is entitled pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code, to receive adequate protection against any diminution in value of its interests in the Prepetition Collateral (including any cash collateral

- 6 -

within the meaning of section 363(a) of the Bankruptcy Code), to the extent set forth in this

Order.

(viii)    <u>Necessity of Entry</u>.  This Court concludes that entry of this Order is

necessary and in the best interests of the Debtor's Estate and creditors.

Based upon the foregoing, and upon the record made before the Court at the Hearing, and after

due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT**:

Section 1.    <u>Authorization and Conditions to Financing</u>.

1.1    <u>Motion Granted</u>. The Motion is granted to the extent provided in this

Order.  Any objection to the entry of this Order that has not been withdrawn, waived, resolved or

settled, and all reservations of rights included therein, is hereby denied and overruled on the

merits.  All actions taken by the Debtor and the DIP Lender prior to the time of the entry of this

Order are hereby approved and reaffirmed in full as if taken in connection with or in reliance on

this Order.

1.2    <u>Authorization to Borrow and Use Loan Proceeds</u>. Subject to the terms and

conditions contained in this Order and the DIP Note, the Debtor shall use the proceeds of the DIP

Loan Facility, and other credit and financial accommodations provided by the DIP Lender under

the DIP Note, solely in accordance with the terms and conditions of the DIP Note and this Order,

including the Budget.

1.3    <u>Financing Documents</u>.

(a) <u>Authorization</u>.  No obligation, payment, transfer or grant of security

hereunder or under the DIP Note shall be stayed, restrained, voidable, avoidable, or recoverable

under the Bankruptcy Code or under any applicable law (including, without limitation, under

chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer

Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to

any defense, reduction, setoff, counterclaim, recoupment, offset, recharacterization,

subordination (whether equitable, contractual or otherwise), crossclaims, or any other challenge

under the Bankruptcy Code or any applicable law, rule or regulation by any person or entity.

(b) <u>Approval; Evidence of Borrowing Arrangements</u>.  All terms,

conditions and covenants set forth in the DIP Note are approved on a final basis.  All such terms,

conditions and covenants shall be sufficient and conclusive evidence of: (i) the borrowing

arrangements by and among the Debtor and the DIP Lender; and (ii) the Debtor's assumption

and adoption of, and agreement to comply with, all the terms, conditions, and covenants of the

DIP Note for all purposes, including, without limitation, to the extent applicable, the payment of

all DIP Obligations arising thereunder.  Upon execution thereof, the DIP Note shall evidence the

DIP Obligations, which DIP Note and DIP Obligations shall be valid, binding and enforceable

against the Debtor, its estate and any successors thereto, including, without limitation, any

trustee appointed in this Case or any other case under the Bankruptcy Code upon the conversion

of this Case (the **"Successor Case"**), and its creditors and other parties-in-interest, in each case,

in accordance with the terms of this Order and the DIP Note.

(c) <u>Non-Material Amendments to DIP Note</u>.  Subject to the terms and

conditions of the DIP Note, the Debtor and the the DIP Lender may make ministerial or non-

material amendments, modifications, or supplements to the DIP Note (each a "**Non-Material**

**DIP Amendment**"), and the DIP Lender may waive any provisions in the DIP Note, without

further approval of the Court; *provided* that the Debtor shall file a notice on the Court's docket of

any Non-Material DIP Amendment within three (3) business days after the effective date thereof.

Any amendments, modifications or supplements to the DIP Note, other than as set forth in the

preceding sentence (a "**Material DIP Amendment**"), shall be filed with the Court, and the

Debtor shall provide prior written notice of the Material DIP Amendment to: (i) counsel to the

DIP Lender; (ii) the U.S. Trustee; and (iii) each member of the Committee.  If no party in interest

files an objection to the Material DIP Amendment with the Court within three (3) business days

from the date the notice of the Material DIP Amendment is filed with the Court in accordance

with this section, the Debtor and the DIP Lender are authorized and empowered to implement, in

accordance with the terms of the DIP Note, such Material DIP Amendment, without further

notice, hearing or approval of this Court.  Any Material DIP Amendment subject to a timely and

unresolved objection must be approved by the Court to be effective.

Section 2.        Postpetition Lien; Superpriority Administrative Claim Status.

2.1      Postpetition Lien.

(a)  Postpetition DIP Lien Grant.  To secure the prompt payment and

performance of any and all DIP Obligations of the Debtor to the DIP Lender of whatever kind,

nature or description, absolute or contingent, now existing or hereafter arising, the DIP Lender

shall have and is hereby granted on a final basis, effective as of the Petition Date, continuing,

valid, binding, enforceable, non-avoidable, and automatically and properly perfected security

interests in and liens upon all Collateral, as such term is defined in the DIP Note (hereinafter, the

"**DIP Collateral**").  For the avoidance of doubt, the liens granted to the DIP Lender hereunder

shall not extend to any funds or other property, whether or not held by the Debtor, to which the

Debtor has no equitable interest within the meaning of section 541(d) of the Bankruptcy Code.

(b)  DIP Lien Priority in DIP Collateral.  The DIP Liens of the DIP Lender

on the DIP Collateral ("**DIP Liens**") securing all DIP Obligations shall be first and senior in

priority to all other interests and liens of every kind, nature and description, whether created

consensually, by an order of the Court or otherwise, first arising on or after the Petition Date,

*provided, however* that the DIP Liens shall be subject to the Carve Out.

             (c)  <u>Postpetition Lien Perfection</u>.  This Order shall be sufficient and

conclusive evidence of the priority, perfection and validity of the DIP Liens and security

interests granted herein, effective as of the Petition Date, without any further act and without

regard to any other federal, state or local requirements or law requiring notice, filing,

registration, recording or possession of the DIP Collateral, or other act to validate or perfect such

security interest or lien, including without limitation, control agreements with any financial

institution(s) party to a Deposit Account Control Agreement or holding a Blocked Account  or

other depository account consisting of DIP Collateral (a **"<u>Perfection Act</u>"**).  Notwithstanding the

foregoing, if the DIP Lender, in his sole discretion, elects for any reason to file, record or

otherwise effectuate any Perfection Act, then the DIP Lender is authorized to perform such act,

and the Debtor is authorized to perform such act to the extent necessary or required by the DIP

Lender, which act or acts shall be deemed to have been accomplished as of the date and time of

entry of this Order notwithstanding the date and time actually accomplished, and in such event,

the subject filing or recording office is authorized to accept, file or record any document in

regard to such act in accordance with applicable law.  The DIP Lender may choose to file, record

or present a certified copy of this Order in the same manner as a Perfection Act, which shall be

tantamount to a Perfection Act, and, in such event, the subject filing or recording office is

authorized to accept, file or record such certified copy of this Order in accordance with

applicable law.  Should the DIP Lender so choose and attempt to file, record or perform a

Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive

or alter the validity, enforceability, attachment, or perfection of the postpetition liens and security

interests granted herein by virtue of the entry of this Order.

(d)  Nullifying Prepetition Restrictions to Postpetition Financing.

(i)  Notwithstanding anything to the contrary contained in any

prepetition agreement, contract, lease, document, note or instrument to which the Debtor is a

party or under which the Debtor is obligated, except as otherwise permitted under the DIP Note,

any provision set forth in such prepetition agreement, contract, lease, document, note or

instrument that restricts, limits or impairs in any way the Debtor from granting DIP Lender

security interests in or liens upon any of the Debtor's assets or properties (including, among

other things, any anti-lien granting or anti-assignment clauses in any leases or other contractual

arrangements to which the Debtor is a party) under the DIP Note or this Order, as applicable, or

otherwise entering into and complying with all of the terms, conditions and provisions hereof or

of the DIP Note, shall not: (i) be effective and/or enforceable against the Debtor or the DIP

Lender, as applicable; or (ii) adversely affect the validity, priority or enforceability of the liens,

security interests, claims, rights, priorities and/or protections granted to the DIP Lender pursuant

to this Order or the DIP Note, in each case, to the maximum extent permitted under the

Bankruptcy Code and other applicable law.

(ii)  To the fullest extent permitted by the Bankruptcy Code or

other applicable law, any provision of any lease, loan document, easement, use agreement,

proffer, covenant, license, contract, organizational document, or other instrument or agreement

that requires the consent or the payment of any fees or obligations to any entity (including any

governmental entity or non-governmental entity) in order for the Debtor to pledge, grant,

mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof

or other DIP Collateral, shall have no force or effect with respect to the DIP Liens on such

leasehold interests or other applicable DIP Collateral or the proceeds of any assignment and/or

sale thereof by the Debtor, in favor of the DIP Lender in accordance with the terms of the DIP

Note and this Order or in favor of the Prepetition Lender in accordance with this Order.

(e)  Except as expressly set forth herein, the DIP Liens and the DIP Loan

Facility Superpriority Claim (i) shall not be made subject to or *pari passu* with (A) any lien,

security interest or claim heretofore or hereinafter granted in the Case or any Successor Case and

shall be valid and enforceable against the Debtor, its estate, any trustee or any other estate

representative appointed or elected in the Case or any Successor Case and/or upon the dismissal

of any of the Case or any Successor Case, (B) any lien that is avoided and preserved for the

benefit of the Debtor and its Estate under section 551 of the Bankruptcy Code or otherwise, and

(C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 506(c),

510, 549, 550 or 551 of the Bankruptcy Code.

2.2    <u>Superpriority Administrative Expenses.</u>

(a)  <u>DIP Loan Facility</u>.  For all DIP Obligations now existing or hereafter

arising pursuant to this Order, the DIP Note, or otherwise, the DIP Lender is granted on a final

basis an allowed superpriority administrative claim pursuant to section 364(c)(1) of the

Bankruptcy Code, having priority in right of payment over any and all other obligations,

liabilities and indebtedness of the Debtor (other than the Carve Out), whether now in existence or

hereafter incurred by the Debtor, and over any and all administrative expenses or priority claims

of the kind specified in, or ordered pursuant to, inter alia, sections 105, 326, 328, 330, 331,

364(c)(1), 503(b), 506(c), 507(a), 507(b), 546(c), 1113 or 1114 of the Bankruptcy Code (other

than the Carve Out), whether or not such expenses or claims may become secured by a judgment

lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative

claim shall be payable from and have recourse to all prepetition and postpetition property of the

Debtor and all proceeds thereof (including the proceeds of any avoidance actions under chapter 5

of the Bankruptcy Code or applicable state law equivalents (the "**DIP Loan Facility**

**Superpriority Claim**").

(b)  No Direct Obligation To Pay Allowed Professional Fees. The DIP

Lender shall not be responsible for the payment or reimbursement of any fees or disbursements

of any persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the

Bankruptcy Code (the **"Debtor Professionals"**), or the Committee, pursuant to section 328 or

1103 of the Bankruptcy Code (the **"Committee Professionals"** and, together with the Debtor

Professionals, the **"Professional Persons"**) incurred in connection with the Case or any

successor case under any chapter of the Bankruptcy Code.  Nothing in this Order or otherwise

shall be construed to obligate the DIP Lender, in any way, to pay compensation to, or to

reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient

funds to pay such compensation or reimbursement.

2.3    Use of Cash Collateral; Adequate Protection.

(a) Authorization to Use Cash Collateral.  Subject to the terms and

conditions of this Order and the DIP Note, the Debtor was, and hereby is, authorized on a final

basis to use the Cash Collateral for the period commencing as of the date of this Order and

terminating upon the occurrence of a DIP Termination Event.

(b) DIP Lender Adequate Protection.  The DIP Lender, shall be granted

the following protection, pursuant to sections 361, 507, and 363(e) of the Bankruptcy Code for,

and to the extent of, the diminution in value of its interests in the Prepetition Collateral

(including Cash Collateral), to the extent valid, perfected, and enforceable, on account of the

Debtor's sale, use, or lease of such Prepetition Collateral (including Cash Collateral), the

imposition of the automatic stay (collectively, the **"DIP Note Diminution in Value"**):

(i) DIP Lender Adequate Protection Lien.  The DIP Lender, shall

be granted, effective and perfected as of the date of entry of this Order and without the necessity

of the execution or filing of mortgages, security agreements, pledge agreements, financing

statements or other agreements, and solely to the extent of the DIP Note Diminution in Value, a

security interest in and lien on the DIP Collateral (the "**DIP Lender Adequate Protection**

**Lien**"), subject and subordinate only to the Carve Out.

(ii) DIP Lender 507(b) Claim.  As adequate protection for the DIP

Note Diminution in Value, the DIP Lender is hereby granted on a final basis as and to the extent

provided by Section 507(b) of the Bankruptcy Code, and solely to the extent of the DIP Note

Diminution in Value, an allowed super-priority administrative expense claim in the Case and any

successor bankruptcy case (the **"DIP Lender Adequate Protection Superpriority Claim"**).

The DIP Lender Adequate Protection Superpriority Claim shall have priority over all

administrative expense claims and unsecured claims against the Debtor and its estate now

existing or hereafter arising, of any kind or nature whatsoever, subject and subordinate only to

the Carve Out.

2.4    Carve Out.  As used in this Order, the "Carve Out" means: (i) all fees

required to be paid to (A) the Clerk of the Court and (B) the Office of the United States Trustee

under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate; plus

the sum of (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under section

726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order,

procedural order, or otherwise, all unpaid fees and expenses (the "**Allowed Professional Fees**")

incurred the Debtor Professionals, and the Professional Persons at any time before or on the first

business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined

herein), whether allowed prior to or after delivery of a Carve Out Trigger Notice; and (iv)

Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed

$350,000 incurred after the first business day following delivery by the DIP Lender of the Carve

Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural

order, or otherwise (the amounts set forth in this clause (iv) being the "**Post-Carve Out Trigger**

**Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written

notice delivered by email (or other electronic means) by the DIP Lender to the Debtor, their lead

restructuring counsel (Chapman and Cutler LLP), the U.S. Trustee, the DIP Lender, and any

counsel to the Committee, which notice may be delivered following the occurrence and during

the continuation of a DIP Termination Event and acceleration of the Obligations under the DIP

Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

Section 3.        Default; Rights and Remedies; Relief from Stay.

          3.1        Events of Default. Each of the following occurrences or events shall

constitute a termination event under this Order (each, a "**DIP Termination Event**") unless

waived in writing by the DIP Lender: (a) the occurrence of an "Event of Default" under and as

defined in the DIP Note, as applicable; (b) the occurrence of the scheduled maturity date of the

DIP Loan Facility; (c) the date of acceleration of the DIP Note; (d) the Debtor seeks any

amendment, modification or extension of this Order without the prior written consent of the DIP

Lender (and no such consent shall be implied by any other action, inaction or acquiescence of the

DIP Lender); (e) the failure by the Debtor to timely perform any of the terms, provisions,

conditions, covenants, or other obligations under this Order; or (f) the filing of any action, claim, defense, complaint, motion or other pleading by the Debtor that would affect the validity or amount of the Prepetition Obligations as of the Petition Date.

3.2    Rights and Remedies upon a DIP Termination Event.

(a) Immediately upon the occurrence of and during the continuance of a DIP Termination Event, the DIP Lender shall be entitled to take any act or exercise any right or remedy as provided in this Order or the DIP Note, as applicable, including, without limitation: (a) declare all DIP Obligations owing under the DIP Note to be immediately due and payable; (b) terminate, reduce or restrict any commitment to extend additional credit to the Debtor to the extent any such commitment remains; (c) terminate the DIP Loan Facility and the DIP Note as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (d) terminate and/or revoke the Debtor's right, if any, under this Order and the DIP Note to use any Cash Collateral and all authority to use Cash Collateral shall cease; (e) invoke the right to charge interest at the default rate under the DIP Note; (f) freeze monies or balances in the Debtor's accounts; (g) immediately setoff any and all amounts in accounts maintained by the Debtor with the DIP Lender against the DIP Obligations; (h) otherwise enforce any and all rights against the DIP Collateral in the possession of any of the DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and (i) take any other actions or exercise any other rights or remedies permitted under this Order, the DIP Note or applicable law; provided, however, that prior to the exercise of any right in clauses (d) and (f) through (i) of this paragraph, the DIP Lender shall be required to provide three (3) days' written notice to counsel to the Debtor and the U.S. Trustee of its intent to exercise its rights and remedies (the

"**Enforcement Notice Period**").  The DIP Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of a DIP Termination Event, or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute a DIP Termination Event.

(b)  Unless during such Enforcement Notice Period the Court determines that a Termination Event has not occurred, then at the conclusion of the Enforcement Notice Period, the automatic stay shall be lifted without the need for any further Order, and the DIP Lender may foreclose on all or any portion of the DIP Collateral, collect accounts receivable, and apply the proceeds thereof to the DIP Obligations, occupy the Debtor's premises to sell or otherwise dispose of the DIP Collateral, or otherwise exercise all rights and remedies available against the DIP Collateral permitted by the DIP Note in accordance with applicable law or equity, without further notice to, hearing of, or order from this Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code, or otherwise.  The Debtor shall cooperate with the DIP Lender in its exercise of rights and remedies, whether against the DIP Collateral or otherwise, and the Debtor shall waive any right to seek relief under the Bankruptcy Code, including under section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Lender set forth in this Order and in the DIP Note, other than to dispute whether a Termination Event has in fact occurred; provided, that the DIP Lender shall object to a request by the Debtor for an expedited hearing before the Court to contest whether a DIP Termination Event has in fact occurred.

3.3    Modification of Automatic Stay.

(a)  The automatic stay provisions of section 362 of the Bankruptcy Code
and any other restriction imposed by an order of the Court or applicable law are on a final basis,
without further notice, application or order of the Court to the extent necessary to permit the DIP
Lender to perform any act authorized or permitted under or by virtue of this Order, the DIP Note
or the other DIP Loan Facility, as applicable, including, without limitation: (i) to implement the
postpetition financing arrangements authorized by this Order; (ii) to take any act to create,
validate, evidence, attach or perfect any lien, security interest, right or claim in the DIP
Collateral; (iii) to assess, charge, collect, advance, deduct and receive payments with respect to
the DIP Obligations (or any portion thereof), including, without limitation, all interests, fees,
costs and expenses permitted under any of the DIP Note and apply such payments to the
Prepetition Obligations; and (iv) immediately following the expiration of the Enforcement
Notice Period (as referred to above), unless stayed, to take any action and exercise all rights and
remedies provided to it by this Order, the DIP Note or applicable law.

Section 4.    Debtor's Waivers. Prior to the indefeasible payment in full, in cash, of all
Prepetition Obligations and all DIP Obligations, whether or not an Event of Default or other DIP
Termination Event has occurred, the Debtor irrevocably waives any right that it may have to seek
further authority: (a) to obtain post-petition loans or other financial accommodations pursuant on
other than an unsecured basis; (b) to challenge the application of any payments authorized by
this Order as pursuant to section 506(b) of the Bankruptcy Code, or to assert that the value of the
Prepetition Collateral is less than the Prepetition Obligations; or (e) to seek relief under the
Bankruptcy Code, including without limitation, under section 105 of the Bankruptcy Code, to the
extent any such relief would in any way restrict or impair: (i) the rights and remedies of the DIP

- 18 -

Lender against the Debtor as provided in this Order or the DIP Note; or (ii) the exercise of such rights or remedies by the DIP Lender against the Debtor in accordance with the DIP Note.

Section 5.    <u>Other Rights and DIP Obligations</u>.

    5.1    <u>No Modification or Stay of This Order</u>. The DIP Lender has acted in good faith in connection with the DIP Loan Facility and with this Order, and its reliance on this Order is in good faith.  Based on the findings set forth in this Order and the record made during the Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Order are hereafter modified, reversed, amended or vacated by a subsequent order of the Court or any other court, the DIP Lender and the Prepetition Lender are entitled to the protections provided in section 364(e) of the Bankruptcy Code.  Notwithstanding: (a) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Order, the DIP Note or any term hereunder or thereunder; or (b) the dismissal or conversion of the Case (each, a **"<u>Subject Event</u>"**); (c) the acts taken by the DIP Lender in accordance with this Order; and (d) the DIP Obligations incurred or arising prior to DIP Lender's actual receipt of written notice (email being sufficient) from the Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Order, and the acts taken by the DIP Lender in accordance with this Order, and the liens granted to the DIP Lender in the DIP Collateral, and all other rights, remedies, privileges, and benefits in favor of the DIP Lender pursuant to this Order and the DIP Note shall remain valid and in full force and effect pursuant to section 364(e) of the Bankruptcy Code.  For purposes of this Order, the term "appeal", as used in section 364(e) of the Bankruptcy Code, shall be construed to mean any proceeding for reconsideration, amending, rehearing, or re-evaluating this Order by this Court or any other tribunal.

5.2    <u>Power to Waive Rights.</u> The DIP Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Order that are in favor of the DIP Lender (the **"<u>DIP Lender Rights</u>"**), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any DIP Lender Right(s).  Any waiver by the DIP Lender of any DIP Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtor to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to the DIP Lender.

5.3    <u>Reservation of Rights.</u> The terms, conditions and provisions of this Order are in addition to and without prejudice to the rights of the DIP Lender to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Note or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the DIP Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professional Persons or other parties seeking compensation or reimbursement from the Estate.

5.4    <u>Binding Effect</u>.

(a) The provisions of this Order and the DIP Note, the DIP Obligations, all Liens and Claims granted hereunder in favor of the DIP Lender, and any and all rights, remedies, privileges and benefits in favor of the DIP Lender provided or acknowledged in this Order, and any actions taken pursuant thereto, shall be effective and enforceable immediately upon entry of

this Order notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

(b) Any order dismissing the Case under section 1112 or otherwise shall be deemed to provide (in accordance with §§ 105 and 349 of the Bankruptcy Code) that: (i) the DIP Loan Facility Superpriority Claim and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Order shall continue in full force and effect notwithstanding such dismissal until the Prepetition Obligations are indefeasibly paid in cash and satisfied in full; (ii) the DIP Loan Facility Superpriority Claim and DIP Liens on and security interests in the DIP Collateral and all other claims, liens, adequate protections and other rights granted pursuant to the terms of this Order shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations are indefeasibly paid and satisfied in full in cash, and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing all such claims, liens, protections and rights.

(c) This Order shall be binding upon the Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or a subsequently converted bankruptcy case of the Debtor.  This Order shall also inure to the benefit of Debtor, the DIP Lender, the Prepetition Lender, and each of their respective successors and assigns.

5.5     Section 552(b) Waiver. The Prepetition Lender is and shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the

case" exception under section 552(b) shall not apply to the Prepetition Lender or the Prepetition

Loan Facility.

        5.6     No Marshaling/Application of Proceeds. In no event shall the DIP Lender

or Prepetition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine

with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds

shall be received and applied in accordance with the DIP Note and the Prepetition Note, as

applicable.

        5.7     Setoff and Recoupment Reservation.  Notwithstanding anything to the

contrary in this Order, the  setoff and recoupment rights of all parties in interest and creditors, if

any, are expressly preserved and reserved.

        5.8     Survival.  The provisions of this Order and any actions taken pursuant

hereto shall survive, and shall not be modified, impaired or discharged by, entry of any order that

may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to

a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Case; or (d) pursuant to which

the Court abstains from hearing the Case.  The terms and provisions of this Order, including the

claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender

and the Prepetition Lender pursuant to this Order, notwithstanding the entry of any such order,

shall continue in the Case, following dismissal of any of the Case, and shall maintain their

priority as provided by this Order until all of the DIP Obligations, pursuant to the DIP Note and

this Order, have been indefeasibly paid in full in cash (such payment being without prejudice to

any terms of provisions contained in the DIP Loan Facility which survive such discharge by their

terms) and all commitments to extend credit under the DIP Loan Facility are terminated.

5.9     <u>Entry of this Order/Waiver of Applicable Stay</u>.  This Order shall be effective and enforceable upon its entry as of the Petition Date and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding anything to the contrary contained in Bankruptcy Rule 4001(a)(3).

5.10    <u>No Stay</u>.  This Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Order.

5.11    <u>Order Governs</u>.  In the event of a conflict between the terms and provisions of the DIP Note and this Order, the terms and provisions of this Order shall govern.

5.12    <u>Retention of Jurisdiction</u>.  The Court retains exclusive jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Order, the DIP Note, and the DIP Loan Facility.


Dated:  August 9, 2019
        White Plains, New York


/s/Robert D. Drain
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

- 23 -