Abigail Rushing Ryan
Texas Bar No. 24035956
Assistant Attorney General
Bankruptcy & Collection Division MC 008
P. O. Box 12548
Austin, TX  78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409
abigail.ryan@oag.texas.gov

ATTORNEY FOR THE STATE OF TEXAS

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: CHAPTER 11
In re: :
: Case No. 19-23185-rdd
RETRIEVAL-MASTERS CREDITORS :
BUREAU, INC., :
:
      Debtors. :
---------------------------------------------------------------x

**LIMITED OBJECTION BY THE STATE OF TEXAS TO THE NOTICE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (I) SETTING BAR DATES FOR SUBMITTING PROOFS OF CLAIM; (II) APPROVING PROCEDURES FOR SUBMITTING PROOFS OF CLAIM; AND (III) APPROVING NOTICE THEREOF (DKT. NO. 121)**

COMES NOW the State of Texas by and through the Office of the Texas Attorney General's, Consumer Protection Division, and files its *Limited Objection by the State of Texas to the Notice of Debtor's Motion for Entry of an Order: (I) Setting Bar Dates for Submitting Proofs of Claim; (II) Approving Procedures for Submitting Proofs of Claim; and (III) Approving Notice Thereof* (Dkt. No. 121) and states as follows:

## OVERVIEW

As this Court is aware, the Debtor's bankruptcy was precipitated by a massive data breach of personal identifying information[1] including, but not limited to, names, home addresses, social security numbers, credit card numbers, and certain medical information. The accounts breached numbered at least seven million, exposing consumers' data throughout the fifty states and Canada. As so many consumers are effected by this breach, and, therefore, this bankruptcy, the State of Texas objects to the Debtor's proposed method of publication notice and the deadlines for the timely filing of claims by the effected consumers set out in the *Notice of Debtor's Motion for Entry of an Order: (I) Setting Bar Dates for Submitting Proofs of Claim; (II) Approving Procedures for Submitting Proofs of Claim; and (III) Approving Notice Thereof* (Dkt. No. 121) (hereinafter, "Debtor's Motion"). The State herein requests that the Debtor's method of publication notice be expanded and that a carveout in the general bar date be created for Data-Breached Consumers (hereinafter "DBCs"), and that the bar date for the DBCs be set at 90 days after the date the Debtor

---

[1] Under Texas law, "Personal Identifying Information," "Sensitive Personal Information," and "Victim" are defined as follows:
"(1) 'Personal identifying information' means information that alone or in conjunction with other information identifies an individual, including an individual's:
     (A) name, social security number, date of birth, or government-issued identification number;
     (B) mother's maiden name;
     (C) unique biometric data, including the individual's fingerprint, voice print, and retina or iris image;
     (D) unique electronic identification number, address, or routing code; and
     (E) telecommunication access device as defined by Section 32.51, Penal Code.
(2) 'Sensitive personal information' means, subject to Subsection (b):
     (A) an individual's first name or first initial and last name in combination with any one or more of the following items, if the name and the items are not encrypted:
          (i) social security number;
          (ii) driver's license number or government-issued identification number; or
          (iii) account number or credit or debit card number in combination with any required security code, access code, or password that would permit access to an individual's financial account; or
     (B) information that identifies an individual and relates to:
          (i) the physical or mental health or condition of the individual;
          (ii) the provision of health care to the individual; or
          (iii) payment for the provision of health care to the individual.
(3) 'Victim' means a person whose identifying information is used by an unauthorized person."
Identity Theft Enforcement and Protection Act, Tex. Bus. & Com. Code § 521.002(a) (West 2019).

mails the packages containing the bar notices.[2] Further, because the pool of consumer creditors is so large, and the potential number of proofs of claim should be expected to increase to well over 250, a Claims Agent should be appointed per the local guidelines for local rule 3003-1, and procedures for a claims website should be put in place to assist consumers in filing claims.

## BACKGROUND

The Debtor is the self-described, largest outside medical-receivables collection agency for some of the largest clinical laboratory systems in the Country. Dkt. No. 2, Declaration of Russell H. Fuchs Pursuant to Local Bankruptcy Rule 1007-2 and In Support Of "First Day" Motions at para. 12. As such, the Debtor collected personally identifiable information needed to collect these outstanding debts. Specifically, according to the Debtor's representative:

> The Debtor's business, by its very nature, requires it to collect and maintain data transmitted to it by its clients that includes personally identifiable information about third-party debtors that could include names, home addresses, social security numbers, bank account information for consumers choosing to pay online by check and, for consumers choosing to pay their outstanding balances by credit card, credit card information. In the case of the AMCA business, that information might also include dates of birth and certain medical information related to any laboratory tests for which payment is sought. In all, at any given time, the Debtor would have held tens of millions of individual points of data regarding millions of individual persons, none of which could be handled without a robust IT system.

*Id*. at para. 13.[3]

However, in March 2019, the Debtor learned of a major security breach that occurred during the prior year. *Id.* at 16. Because the Debtor was unable to drill down to the specific subaccounts/information that was breached, on June 6, 2019, in response to legal requirements and

---

[2] At this time, the Debtor's Motion sets this mailing date at September 18, 2019. The governmental bar date is the statutory 180-day-timeframe, and, as such, extending the DBCs' deadline to 90 days should not delay the administration of the bankruptcy.

[3] This statement is in direct conflict with the Debtor's representation on its Statement of Financial Affairs, under question 9, Mr. Fuchs, on behalf of the Debtor, answered "No" indicating that the Debtor did not collect and maintain personal private information, and, as such, did not list procedures used to handle personal private information. Dkt. No. 95 at Part 9 "Personally Identifiable Information."

3

regulatory obligations that were triggered by the data breach, the Debtor started sending out notices of this data breach to over 7 million consumers. *Id.* at 19. Further, the Debtors are aware that, "affected recipients [of the data-breach notice] in certain states and regarding whom particular types of information may have been compromised may, if they desire, obtain two years of third party credit monitoring at the Debtor's sole expense." *Id.* at 19 at n.6.

On June 17, 2019, the Debtor filed bankruptcy. After a thorough review of the docket, it seems that the Debtor did not give notice of the bankruptcy filing to the 7 million consumers to whom the data breach notices were sent. Ex. A, Martin Affidavit. Specifically, the matrix only contains 164 addresses and of that number only 156 are mailable recipients. Ex. B, Printout of Matrix. The Order on Debtor's motion for administration likewise limits the service list. *See* Dkt. No. 31, at sec. A.

On August 29, 2019, the Debtor's Motion was filed, and seeks the minimum timeframe allowed by this Court's local rules for all general unsecured claims to be filed. Further, although claims filed in this case should be expected to exceed 250, the Debtor does not seek to appoint a Claims Agent per the local guidelines. Ex. C, Printout of Guidelines.

## ARGUMENT

I. **For Due Process to Be Fulfilled, the DBCs Should be Given 90 Days to File Their Proofs of Claim and The Debtor's Should Expand Their Publication Notice.**

While the Debtor's proposed methods of giving notice of the claims bar date, and the number of days set for reply do comport with the local rules and guidelines, based upon the facts and circumstances of this case, the Debtor's method of noticing through publication and the deadlines set for the DBCs to timely reply are insufficient to assure due process for the DBCs.

A basic and important tenant of bankruptcy law requires that creditors receive reasonable notice of the bankruptcy and reasonable notice of the claims bar date so that the creditors may

4

timely file any claims against the Debtor's estate and have an opportunity to be heard. *See In re XO Commc'ns Inc.*, 301 B.R. 782, 792-93 (Bankr. S.D.N.Y. 2003). Moreover, the creditor who does not receive this reasonable notice, will not have their claim discharged in the bankruptcy. *Id.*

As recognized by Bankruptcy Judge Gonzalez in *In re XTO Communications*, this tenant of reasonable notice to creditors is based upon the fundamental requirement of due process. *See id.* "[T]he Supreme Court found in, *Mullane*, '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Another important tenant of bankruptcy law is to allow Chapter 11 debtors to identify creditors and effectuate a prompt reorganization of the company. *See In re XTO Communications*, 301 B.R. at 791. Federal Rule of Bankruptcy Procedure 3003(c)(3) assists the Debtor in timely identifying creditors by having the court set a reasonable bar date for the filing of claims. *Id.* The Court, however, must balance the need for prompt reorganization and costs with the Federal Due Process rights of creditors when setting the manner and timeframe for notice and timely filings of claims. *See id*. at 792-93.

In the case-at-bar, the data breach at issue was discovered because the credit card banks with whom the Debtors conducted business had many consumers reporting fraudulent charges on their credit cards. *See* Dkt. No. 2 at 16. Once the credit card banks reviewed these accounts, the common factor among these consumer credit card accounts was that one of the last legitimate charges made on these accounts was to the Debtor. *Id.* Therefore, the credit card banks were able to determine that the data breach that occurred was on the Debtor's systems. *See* Dkt. No. 2 at 16,

5

n.5. After receiving notice, the Debtors did, in fact, confirm a "major data breach" had occurred. *Id.* at para. 16.

Two classes of DBCs exist in this case: 1) The consumers whose personal private information was stolen <u>and</u> fraudulently used, resulting in the consumers reporting fraudulent charges on their accounts, and 2) consumers whose personal identifiable information was stolen, but not yet fraudulently used. Both classes are creditors of the Estate, and whether they are "known or unknown" does not change the fact that they are due reasonable notice of the bankruptcy and a reasonable notice of the proof of claims bar date and a bar date that allows for timely filings of claims. Nor does it change the fact that, as recognized by the Debtor:

> affected recipients [of the data-breach notice] in certain states and regarding whom particular types of information may have been compromised may, if they desire, obtain two years of third party credit monitoring at the Debtor's sole expense.

*Id.* at 19, n.6.[4]

The only things the "known or unknown" status changes are *how* this notice will be given, and the DBC's timeframe for filing a timely response. At this time, the docket does not reflect that notice of the bankruptcy has been give to the DBCs, and the only DBCs that will receive <u>direct-mail notice</u> of the claims bar date are those who have filed a claim in this case or are the <u>named parties</u> in the pending multidistrict litigation.[5] Ex. A; Dkt. No. 121 at para. 21. In order to reach the other millions of DBCs spread throughout the country, the Debtor's Motion seeks to give notice of the bar date through a <u>one-time-only</u> notice posted in the National Edition of the *New York Times*. *Id.* at para. 22.

---

[4] The Debtor offered credit monitoring services to some consumers, but the deadline set in the Debtor's letter expires on September 30, 2019. Further, upon information and belief, identity theft mitigation services were to be part of the credit monitoring services offered to the consumers, but no details on such monitoring have been seen. Finally, upon information and belief, some consumers who attempted to sign-up for this credit monitoring service offered by the Debtor were denied. As such, these consumers should be able to file proofs of claim for these services.

[5] As of September 5, 2019, the claims register only reflects that 13 claims have been filed in this case. *See* Ex. E.

Further, whether the DBCs receive notice via mail or the "one-day, one-newspaper" method, it is anticipated that each DBC will need to, at minimum do the following: 1. Research their credit card statements for the past year; 2. Find out if, under their state law, they have the ability to request that the Debtor pay for a credit monitoring report; 3. Collect the proper documentation to support their proof of claim; 5. Consult a lawyer (if necessary and affordable); and  5. Timely mail their proofs of claim to be received by the Clerk before the due date.

As for the due dates, those few DBCs that are mailed the direct-mail notice will have a total of 35 days *from the date of mailing* not receipt to timely file their proof of claim. *Id*. at 21. The remainder of the millions of nationwide DBCs that will purportedly receive notice via the "one-day, one-newspaper" method will have a total of 28 days *from the date of publishing* to timely file their claims.  *Id*. at 22.

These deadlines are further shortened by the fact that the Debtors will not use the mailbox rule for timely acceptance of the claims but will only count claims timely when actually received by the Clerk. *Id*. at 18(d).  As the DBCs are spread throughout the country, logically, mailing time will take longer to reach consumers in states that are geographically farther away; likewise, mail will take longer to be received by the Clerk from those states.  While DBCs may hire an attorney to file the claim online or utilize online filing themselves, with the vast number of those effected, not all DBCs will have the time, ability, or resources to do so, and, as such, may not be able to get a claim timely filed.

To remedy these issues, the State requests that the Debtor be required to carve out the DBCs from the other, more typical, general unsecured claims, and give the DBCs a 90-day timeframe in which to timely file their claims.  For more typical, general-unsecured creditors, the general bar date should stay as requested in Debtor's Motion and the statutory governmental bar

7

date will stay at 180 days. The only change would be to insert a new category of claims-bar date for the DBCs in this case.

Further, the State requests that, in order to properly reach these millions of DBCs, that the Debtor be required to broaden the scope of the publication notice to include major newspapers and publications in different regions of the United States,[6] and include a website that consumers may access to find more information regarding the proof of claim process.

Extending the timeframe by which DBCs may file a timely claim should not hinder the administration of the Estate, as the general bar date for all other general unsecured creditors will stay set at 35 or 28 days respective of the type of service provided, and the governmental bar date will stay set at the statutory 180 days, the new deadline for DBCs timely filing of claims will fall in between the two at 90 days. Further, by noticing other news papers and including a website, the process will reach more DBCs throughout the country, thereby allowing Due Process in this case.

## II. Per the Local Guidelines for Rule 3003-1, a Claims Agent Should be Appointed to Manage these Claims.

As set out above, personally identifiable information for millions of consumers was exposed and some information fraudulently utilized because of the breach of the Debtor's systems. As such, it is reasonable to expect that the Debtor will receive many proofs of claim from theses millions of consumers. In fact, prior to the bankruptcy, the Debtor notified over 160,000 individual consumers that they are entitled to 24 months of credit monitoring services, to include identity-theft-mitigation services, to be paid by the now Debtor. Ex. D, Sample Letter to Consumers. This

---

[6] For example, in order to reach the millions of consumers affected or possibly affected by faulty airbags, the Debtor, TK Holdings (Takata), was required to publish the bar date notices in each of the following: The national editions of *The Wall Street Journal*, *The New York Times*, and *USA Today*, and a one-time publishing of the bar date notice in each of the following: *The Los Angeles Times*, *The Mercury News*, *The Dallas Morning News*, *Houston Chronicle*, *Miami Herald*, *Tampa Bay Times*, and *Automotive News*. *See In re T.K. Holdings, Inc.*, No. 17-11375 (Bankr. Del. Oct. 4, 2017), ECF No. 959, para. 11.

prebankruptcy offer expires on September 30, 2019, per the notice sent. *Id.* As such, it is reasonable to expect that many consumers will seek to file proofs of claim in this case.

At this time, there are 13 proofs of claim on file, and the matrix contains 164 recipients with 156 of them having a proper mailing address. *See* Exs. B & E. After the consumers are properly notified of the bar date, it should be expected for the claims filed to increase over the 250-claim-limit set by the Court's guidelines. As such, and per the guidelines of this Court for Local Rule 3003-1, the Debtor should be ordered to modify their pleading to seek to have an agent appointed to manage the claims in this case. *See* Ex. C.

## PRAYER

Wherefore premise considered, the State of Texas prays that the Court order the Debtor to: (1) Expand the scope of the notice of publication to include other national newspapers and local/regional newspapers and a website that consumers may use to gain more information; (2) Carveout of the general unsecured creditors a class for general unsecured data breach consumers (DBCs) whose deadline to timely file a proof of claim will be set at 90 days from the date of the Debtors mailing of the bar notices; (3) Require the Debtor to seek to have an agent appointed to manage these proofs of claims as required by this Court's guidelines for Local Rule 3003-1; and (4) for any further relief to which the State is entitled.

Dated: September 6, 2019

                Respectfully submitted,

                KEN PAXTON
                Attorney General of Texas

                JEFFREY C. MATEER
                First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

RONALD R. DEL VENTO
Assistant Attorney General
Chief, Bankruptcy & Collections Division

*/s/ Abigail Rushing Ryan*
ABIGAIL RUSHING RYAN
Texas State Bar No. 24035956
Bankruptcy & Collections Division
P. O. Box 12548
Austin, Texas 78711-2548
P: (512) 475-4297/F: (512) 936-1409
abigail.ryan@oag.texas.gov

ATTORNEYS FOR THE STATE OF TEXAS

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of the foregoing has been served via the Court's Electronic Filing System on all parties requesting notice in this proceeding and that copies were mailed to the counsel and parties listed below via first class U.S. Mail, postage prepaid, on September 6, 2019.

Retrieval-Masters Creditors Bureau, Inc.
PO Box 160
Elmsford, NY 10523

*Debtor*

Steven Wilamowsky
Chapman and Cutler LLP
1270 Avenue of the Americas, 30th Floor
New York, NY 10020

*Counsel for Debtors*

Serene K. Nakano
Office of the U.S. Trustee
201 Varick Street
Suite 1006
New York, NY 10014

*Counsel for the U.S. Trustee*

                                                  */s/ Abigail Rushing Ryan*
                                                ABIGAIL RUSHING RYAN
                                                Assistant Attorney General