Christopher R. Donoho, III
John D. Beck
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
Email: chris.donoho@hoganlovells.com
        john.beck@hoganlovells.com

*Attorneys for Laboratory Corporation of America*
*Holdings and Laboratory Corporation of America*

Jessica C.K. Boelter (admitted *pro hac vice*)
William E. Curtin
**SIDLEY AUSTIN LLP**
787 Seventh Ave
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: jboelter@sidley.com
wcurtin@sidley.com

*Attorneys for Quest Diagnostics Incorporated*

William Hao
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: william.hao@alston.com

-and-

William S. Sugden (admitted *pro hac vice*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
Telephone 404-881-7000
(F) 404-253-8235
Email: will.sugden@alston.com

*Attorneys for Optum360, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | Case No. 19-23185 (RDD) |
| Debtor. | |

**JOINT MOTION FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 362,**
**DIRECTING THE DEBTOR TO PRODUCE CERTAIN DOCUMENTS**

---

[1] The last four digits of the Debtor's taxpayer identification number are 9495. The location of the Debtor's service address for purposes of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523. The Debtor also does business as American Medical Collection Agency.

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION ......................................................................................................................7

BACKGROUND ......................................................................................................................7

ARGUMENT ..........................................................................................................................10

      I.     Cause Exists for Relief From the Automatic Stay Pursuant to Section
            362(d)(1) of the Bankruptcy Code. ......................................................................10

      II.    The Court Should Direct the Debtor, Pursuant to Section 105(a), to Produce
            the Documents and Information in the Debtor Response to the Movants. ..............13

      III.   Bankruptcy Rule 2004 Provides Alternative Authority to Direct the
            Production of the Documents and Information in the Debtor Response to the
            Movants' Outside Counsel. ...................................................................................20

      IV.   Waiver of Bankruptcy Rule 4001(a)(3). ...............................................................23

RESERVATION OF RIGHTS ................................................................................................24

NO PRIOR REQUEST ...........................................................................................................24

CONCLUSION .......................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*In re Artisanal 2015, LLC*,
    No. 17-12319 (JLG), 2017 WL 5125545 (Bankr. S.D.N.Y. Nov. 3, 2017) ..........................11

*In re Bakalis*,
    199 B.R. 443 (Bankr. E.D.N.Y. 1996) ...................................................................................21

*In re Countrywide Home Loans, Inc.*,
    384 B.R. 373 (Bankr. W.D. Pa. 2008)....................................................................................21

*In re Drexel Burnham Lambert Group, Inc.*,
    123 B.R. 702 (Bankr. S.D.N.Y. 1991) ...................................................................................20

*In re Glitner Banki HF*,
    No. 08-14757 (SMB), 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011).......................22

*In re Int'l Fibercom, Inc.*,
    283 B.R. 290 (Bankr. D. Ariz. 2002) .....................................................................................22

*In re Jamo*,
    283 F.3d 392 (1st Cir. 2002) .......................................................................................... 19, 20

*In re Johns- Manville Corp.*,
    42 B.R. 362 (Bankr. S.D.N.Y. 1984) .....................................................................................20

*In re Lehman Bros. Holdings Inc.*,
    591 B.R. 153 (Bankr. S.D.N.Y. 2018) ...................................................................................13

*In re Lehman Bros. Inc.*,
    No. 08-01420, 2008 WL 5423214 (Bankr. S.D.N.Y. Nov. 26, 2008) ...................................21

*In re Metiom, Inc.*,
    318 B.R. 263 (S.D.N.Y. 2004)................................................................................................22

*In re Oi Brasil Holdings Cooperatief U.A.*,
    578 B.R. 169 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R. 358
    (Bankr. S.D.N.Y. 2018) ................................................................................................. 19, 20

*In re Project Orange Assocs., LLC*,
    432 B.R. 89 (Bankr. S.D.N.Y. 2010) .....................................................................................11

*In re Quigley Co.*,
    361 B.R. 723 (Bankr. S.D.N.Y. 2007) ...................................................................................10

*In re Tognetti*,
No. 03-37171, 2006 WL 2587544 (Bankr. S.D.N.Y. June 21, 2006)....................................11

*Sears, Roebuck & Co. v. Spivey*,
265 B.R. 357 (E.D.N.Y. 2001) ...............................................................................................19

*In re Sonnax Indus. v. Tri Component Prods. Corp.*,
907 F.2d 1280 (2d Cir. 1990).............................................................................. 9, 10, 11, 12

*St. Clair v. Cadles of Grassy Meadows II, L.L.C.*,
550 B.R. 655 (E.D.N.Y. 2016) ...............................................................................................21

*In re SunEdison, Inc.*,
572 B.R. 482 (Bankr. S.D.N.Y. 2017) ...................................................................................22

*In re Symington*,
209 B.R. 678 (Bankr. D. Md. 1997).......................................................................................20

*Teledyne Indus. v. Eon Cmp.*,
373 F. Supp. 191 (S.D.N.Y. 1974)....................................................................................11, 12

*United States v. Sutton*,
786 F.2d 1305 (5th Cir. 1986) ...............................................................................................19

*In re Valley Forge Plaza Assocs.*,
109 B.R. 669 (Bankr. E.D. Pa. 1990)...................................................................................21

*In re Wash. Mut., Inc.*,
408 B.R. 45 (Bankr. D. Del. 2009) ..................................................................................22, 23

## Statutes

11 U.S.C. § 105(a) ..................................................................................................... *passim*

11 U.S.C. § 107(b) ...............................................................................................................19

11 U.S.C. § 107(c) ...............................................................................................................19

11 U.S.C. § 333.............................................................................................................19, 20

11 U.S.C. § 362(d) ..................................................................................................... *passim*

28 U.S.C. § 157........................................................................................................................7

28 U.S.C. § 1334......................................................................................................................7

28 U.S.C. § 1408......................................................................................................................7

28 U.S.C. § 1409......................................................................................................................7

Conn. Gen. Stat. § 1-210(b)(3) ........................................................................................14

Conn. Gen. Stat. § 1-210(b)(5) ........................................................................................14

5 ILCS 140/7(1)(g) ...........................................................................................................15

Ind. Code 5-14-3-9(e) .......................................................................................................16

Mass Gen. Laws ch. 4, § 7(26)(g) ....................................................................................15

**Rules and Regulations**

45 C.F.R. § 164.512(e)(v) .................................................................................................2

Fed. R. Bankr. P. 2004 ...............................................................................................*passim*

Fed. R. Bankr. P. 2004(a) .................................................................................................20

Fed. R. Bankr. P. 2004(b) .................................................................................................20

Fed. R. Bankr. P. 4001(a)(3) ............................................................................................23

Fed. R. Civ. P. 45 .................................................................................................5, 18, 23

Laboratory Corporation of America Holdings and Laboratory Corporation of America (collectively, "**LabCorp**"), Optum360, LLC ("**Optum360**") and Quest Diagnostics Incorporated ("**Quest**") (collectively, the "**Movants**"), by and through their undersigned counsel, respectfully submit this joint motion ("**Motion**") for entry of an Order substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**"), directing Retrieval-Masters Creditors Bureau, Inc. d/b/a American Medical Collection Agency (the "**Debtor**" or "**AMCA**") to produce to the Movants' outside counsel the documents and information contained in the Debtor Response (as defined below) to allow them to designate documents as confidential in order to prevent a substantial risk of irreparable harm to the Movants that would occur if such documents were publicly disclosed. In support of the Motion, the Movants respectfully state as follows:

## PRELIMINARY STATEMENT

1.      By this Motion, the Movants seek limited and focused relief consisting solely of the production to the Movants' outside counsel of a copy of the documents and information the Debtor has agreed to produce to the offices of various state Attorneys General[2] ("**Multi-State Group**")—for the purpose of allowing the Movants to conduct an outside-attorneys-eyes-only confidentiality review.[3] Such documents and information are very likely to include the Movants'

---

[2] On June 10, 2019, the Office of the Indiana Attorney General served Debtor with a Civil Investigative Demand seeking documents and answers to interrogatories relating to the Data Breach. The following 36 States have entered into a common interest agreement relevant to the data breach investigation: Indiana, Illinois, Connecticut, Arizona, Arkansas, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia and the District of Columbia.

[3] As reflected in the proposed order submitted herewith, the Movants request that the Court's order granting the relief sought by this Motion specify that (i) the Movants' outside counsel shall not share the documents obtained via this Motion with their clients, (ii) the Movants shall not use or disclose the information obtained via this Motion for any purpose unrelated to the Multi-State Group's investigation, and (iii) at the conclusion of the Multi-State Group's investigation, the Movants shall return to the Debtor or destroy the information produced by the Debtor pursuant to this Motion. The Movants have voluntarily proposed these restrictions on their use of such information to protect

confidential, sensitive information that they provided to the Debtor pursuant to contractual provisions that obligated the Debtor to protect the confidentiality of the information. The confidential information at issue includes but is not limited to information relating to trade secrets, competitive information, pricing details, and customers and patients, the disclosure of which could cause irreparable harm to the Movants. And the Debtor concedes that it expects to produce the Movants' confidential information to the Multi-State Group. (Dkt. No. 175 at 5). Public disclosure of this important and sensitive confidential information would present a substantial risk of irreparable harm to the Movants.

2.      There is a substantial risk of such a public disclosure, and the consequent irreparable harm, if the Movants' request is not granted. The 36 Attorneys General that are participating in the Multistate investigation (and which are thus eligible to receive documents produced by the Debtor pursuant to the Multi-State Group's agreement with the Debtor) may receive public records requests under their respective State laws. Those laws vary from State to State, but in general, records that contain trade secrets or confidential commercial information are better shielded from public disclosure than records that do not contain such information. Giving the Movants the opportunity to identify the documents within the Debtor's production that are confidential is critical for two reasons. First, the Movants are far better positioned to determine what information is confidential than the regulators in the Multi-State Group; the Movants understand what is proprietary, confidential, and/or commercially sensitive within their business in a manner that others outside the Movants cannot. This is why Attorney General Offices enter into confidentiality agreements as a standard practice with entities they seek documents from—agreements providing that the producing entity will make confidentiality

---

confidentiality interests of third parties, and ensure that this order qualifies as a HIPAA-Qualified Protective Order under 45 CFR § 164.512(e)(v).

designations on the documents produced to the Attorney General Offices. Indeed, the Movants are separately negotiating confidentiality agreements with the Multi-State Group under which they may designate as confidential documents that they produce to the Multi-State Group, and would anticipate that those same agreements would cover documents produced by the Debtor and designated as confidential by the Movants. Second, by making confidentiality designations, the Movants will ensure that the Multi-State Group is aware that the designated documents and information originated with the designating Movant and are considered confidential by that Movant—a step that is essential in order to confer important procedural rights on the Movants under state law, as discussed in detail below.

3.          The requested relief would not prejudice the Debtor or the Multi-State Group in any way. The Debtor and the Multi-State Group have reached a proposed agreement—which they have submitted to the Court—that would settle their dispute about whether the Debtor needed to comply with the Multi-State Group's requests ("**Agreement**"). Under the Agreement, the Debtor would produce responsive documents and information to the Multi-State Group. The Movants' requested relief *would not delay or prevent the Debtor's production of that information to the Multi-State Group,*[4] even though the production creates an immediate threat to the confidentiality interests of the Movants. Instead, the Debtor would simply provide the Movants' outside counsel a duplicate copy of the information it produces to the Multi-State Group. In addition, to the extent that providing a copy of such information to the Movants' outside counsel imposes any cost, the Movants are willing to bear that cost. Nor would the relief

---

[4] The Debtor's recently-filed Reply to the Movant's Limited Objection to the Agreement mistakenly states that the Movants are seeking to delay the Debtor's production to the Multi-State Group until the Movants receive a copy of it. Dkt. No. 175 at 2-4. This is incorrect; the Movants were clear about this point in their Limited Objection and repeat that point explicitly here.

3

requested by this Motion require the Court to enter any order binding the States or the Multi-State Group.[5]

4.      Procedurally, the Movants believe that the Bankruptcy Code provides several alternate procedures under which such relief could be granted.  The Movants set out in Parts I and II below why the requested Order is proper under Bankruptcy Code §§ 105(a) and 362(d)(1). In addition, as described in Part III below, it would also be proper for the Court to issue the requested order under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), since providing the Movants' outside counsel with a copy of the Debtor's production for the limited purpose of conducting a confidentiality review is a proper, highly limited examination of the Debtor under that Rule.  In fact, in its recent reply to the Movants' Limited Objection,[6] the Multi-State Group agrees that it would be proper for the Movants to receive a copy and conduct a confidentiality review of at least *some* of the documents the Debtor anticipates producing to the Multi-State Group, as long as the Movants were to either file a lift stay motion or seek the documents under Bankr. R. 2004.  *See* Dkt. No. 176 ¶¶ 24-25 ("Either mechanism . . . would achieve [the Movants'] stated goal of receiving the documents and *would not interfere with the agreement* reached after months of negotiations between the Debtor and the Multi-State Group.") (emphasis added).  These are the exact forms of relief the Movants request here.

5.      The relief sought in this Motion creates a practical solution that balances the valid interests of the parties and harms no party: (i) it would protect the confidentiality interests of the

---

[5] The Movants understand that the Multi-State Group would prefer to be free from any orders from or involvement by this or other federal courts in their state investigations.  *See, e.g.,* Dkt. 175 at 2 (citing "the desire of the Multi-State Group to avoid conceding the Court's jurisdiction over their investigations"); *id.* at 3 (citing the Multi-State Group's "position that the Court does not have the power and/or jurisdiction to delimit the nature or conduct of their respective investigations").

[6] The Movants' Limited Objection (Dkt. No. 168) simply objected to the Agreement for the purpose of requesting that the court issue a protective order to temporarily protect the Movants' confidential information, pending a more permanent solution—which the Movants are requesting in this Motion.

Movants; (ii) it would not impose any burden on the Debtor; and (iii) it would not delay the production of documents and information by AMCA to the Multi-State Group.  However, the Multi-State Group attempts to argue against the Movants receiving *all* of the Debtor's production, suggesting that each Movant should only receive the precise confidential documents and information (as incorporated into whatever documents the Debtor may have created that contained such confidential information) that each of them provided to the Debtor—even though the Multi-State Group agrees that there is no practical way for the Debtor to divide its production into such separate, tidy bundles.  Providing the Movants with the documents for designation is the only practical means of assuring that the documents containing the Movants' confidential information are appropriately identified.  Concerns that this solution would result in some Movants seeing confidential information of other Movants is addressed by the Movants' request that the Court's order limit the production of these documents to their outside counsel for an outside-attorneys-eyes-only review.

6.      The Multi-State Group also states briefly and without explanation that providing these documents to the Movants would somehow "undercut" or "taint" their "investigatory process."  Dkt. No. 176 at 4, 12.  The Multi-State Group does not explain why it deems it essential to the investigation (which was publicly announced by the Multi-State Group after *the Movants* publicly announced the potential data compromise on Debtor's systems) to keep the Debtor's production secret from the Movants when the Multi-State Group acknowledges that some form of confidentiality review is appropriate.  In any event, the Movants are also Defendants in the Multi-District Litigation pending before Judge Madeline Arleo in the U.S. District Court for the District of New Jersey (litigation stemming from the same ground as the Multi-State Group's investigation) and anticipate returning to this Court soon with another lift

stay motion—accompanied by a subpoena to Debtor issued under Fed. R. Civ. P. 45—seeking the Court's authorization to obtain documents from Debtor that will be relevant to, and in fact critical in, that litigation.

7.     Finally, the Multi-State Group and the Debtor claim that there is no need for the Court to allow the Movants to conduct a confidentiality review, on the theory that the Multi-State Group has already agreed to protect the confidentiality of these documents. But that is not what the Agreement provides. Rather, the Agreement contains a vague statement that the 36 States currently signed on to the Multistate investigation (and thus eligible to receive any of the confidential documents or information produced by Debtor) "agree to afford these documents the highest level of protection against disclosure provided under their respective laws." Dkt. No. 176-1 at 2. But those laws vary widely in terms of the "protection against disclosure" they provide. The States do not have the statutory authority to declare the entire production from the Debtor exempt from disclosure; in numerous states, protection from disclosure will depend on whether the documents and information are identified as containing confidential information. If the State does not realize that the document contains confidential information, it may well be foreclosed from protecting it from public disclosure—even though it may in fact contain the Movants' highly confidential information. Thus, even if a state believes that it is providing "the highest level of protection" available under state law, it may be providing no protection at all for highly confidential documents. It would be unfair to Movants' important confidentiality interests to trust that 36 state agencies unfamiliar with Movants' documents and businesses will be able to adequately identify and protect the confidentiality of Movants' information in the absence of confidentiality designations from Movants and in the face of widely-varying state statutes.

8.      The Movants' requested relief is fair and practical.   The Movants sought agreement from the Multi-State Group to receive the documents prior to filing their objection and this Motion. The Multi-State Group declined, and thus, it is both critical and appropriate for this Court to take reasonable actions to help protect the legitimate confidentiality interests of the Movants.   The Multi-State Group has acknowledged as much by noting that the use of these procedural mechanisms in this Court would be appropriate and "would not interfere" with the Agreement between the Multi-State Group and the Debtor.

9.      Accordingly, the Court should grant the Movants' request using the procedure that it deems most appropriate.

## JURISDICTION

10.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a) and 362(d) and Bankruptcy Rule 2004.

## BACKGROUND

11.      The Debtor was a contracted billing collections vendor to a number of entities, including LabCorp and Optum360.[7]

12.      As discussed extensively at the First Day Hearing and numerous hearings since, the Debtor has reported that it experienced a data security incident in which it appears that an unauthorized user had access to AMCA's system between August 1, 2018, and March 30, 2019 ("**Data Breach**").

---

[7] Optum360 is not a lab but provides revenue cycle management services to Quest.  Before Optum360 took over Quest's revenue management services, Quest and the Debtor were parties to a Service Agreement dated December 25, 2014 ("**Service Agreement**").  Beginning on December 1, 2016, Optum360 assumed the Service Agreement as part of the revenue cycle management services it provides to Quest. Quest has not had a contractual relationship with AMCA since that time.

13.     On May 14, 2019, the Debtor informed the Movants of the Data Breach.  The Movants also promptly stopped sending new collection requests to AMCA and directed AMCA to stop working on any pending collection requests.

14.     On June 17, 2019 ("**Petition Date**"), the Debtor filed its petition under chapter 11 of the Bankruptcy Code.

15.     On the Petition Date, the Debtor filed a Motion for an Order Authorizing and Approving Procedures for Managing Governmental Requests and/or Demands for Information; and an Emergency Order Enjoining Related Governmental Action Pending Court's Consideration of Such Procedures (Dkt. No. 3; "**Governmental Action Injunction Motion**").  On July 10, 2019, the State of Indiana filed a Motion to Dismiss the Governmental Action Injunction Motion (Dkt. No. 51).

16.     On July 10, 2019, the State of Indiana filed a Motion to Convert to Chapter 7, or in the Alternative, Appoint a Chapter 11 Trustee (Dkt. No. 52; "**AG Motion to Convert**") in the case, citing the Debtor's lack of intent and inability to reorganize and its lack of transparency in dealing with the fallout from the Data Breach.  On July 12, 2019 and July 15, 2019, the State of Indiana filed informal letters in support of the AG Motion to Convert from the Attorneys General for the States of Tennessee, Ohio, Washington, Michigan, Connecticut, Nevada, Texas, New York, and Kansas.  *See* Statements in Support (Dkt. Nos. 59 and 59-1).  Both Optum360 and Quest joined in the AG Motion to Convert (Dkt. Nos. 67 and 72).

17.     On October 7, 2019, the Debtor filed a Joint Motion to Adjourn Docket Numbers 3 and 52 Without Date and Without Prejudice and Notice of Agreement Between Debtor and Multi-State Group (Dkt. No. 153; "**Agreement Motion**").

18.     The Agreement Motion seeks court approval of the Agreement between the Debtor and the Multi-State Group to allow the Debtor to respond, pursuant to certain procedures, to the Multi-State Group's requests for documents and information regarding the Data Breach ("**Debtor Response**").

19.     On October 18, 2019, the Movants filed a limited objection (Dkt. No. 168; "**Limited Objection**") to the Agreement Motion, seeking to ensure that documents and information included in the Debtor Response—which are likely to include the Movants' confidential and sensitive information—are protected by asking the Court to modify the proposed order approving the Agreement to direct the Multi-State Group not to disclose documents and information received from the Debtor beyond the Multi-State Group until further order of the Court.  The Movants sought this temporary measure to allow time for the parties to attempt to reach agreement regarding access to, review of, and the provision of confidentiality designations for the Movants' confidential information (in the Debtor's possession), or if not, to seek appropriate relief from the Court.

20.     The Agreement Motion is currently pending before the Court and the Movants have, to date, been unable to reach an agreement with the Debtor or the Multi-State Group as to a procedure whereby the Movants could review the Debtor Response, determine confidentiality designations, and communicate such designations to the Multi-State Group.

## ARGUMENT

**I.    Cause Exists for Relief From the Automatic Stay Pursuant to Section 362(d)(1) of the Bankruptcy Code.**

21.     Section 362(d)(1) of the Bankruptcy Code provides that this Court shall grant relief from the automatic stay upon a showing of "cause" by a party in interest.  11 U.S.C. § 362(d)(1).  The burden of proof on a motion to lift the automatic stay is a shifting one.  Once the moving party makes a prima facie showing that "cause" exists, its initial burden is satisfied and the burden shifts to the debtor to show that "cause" does not exist.  *See* 11 U.S.C. § 362(g)(1); *In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).

22.     Although the Bankruptcy Code does not define "cause," the Second Circuit has established twelve (12) factors to guide a court's determination of whether cause is present:

(1) whether relief would result in a partial or complete resolution of the

issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been

established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending

it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other

creditors;

(8) whether the judgment claim arising from the other action is subject to

equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*In re Quigley Co.*, 361 B.R. 723, 743-44 (Bankr. S.D.N.Y. 2007) (citing *In re Sonnax*, 907 F.2d at 1286). Not all of the *Sonnax* factors are relevant for every case, and courts are not required to consider each factor or give equal weight to each factor considered. *See In re Artisanal 2015, LLC*, No. 17-12319 (JLG), 2017 WL 5125545, at *12 (Bankr. S.D.N.Y. Nov. 3, 2017) (citing *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010) (citing *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994)).

23.    Due to the nature of the relief sought most of the *Sonnax* factors do not apply in this case.[8]  However, consideration of the factors that are relevant leads to the inescapable conclusion that stay relief is warranted, and indeed benefits not only the Movants, but the Debtor and all creditors.

24.    The purpose of the automatic stay is "to prevent interference with, or diminution of, the debtor's property during the pendency of [bankruptcy]." *Teledyne Indus. v. Eon Corp.*, 373 F. Supp. 191, 203 (S.D.N.Y. 1974), *see also In re Sonnax*, 907 F.2d at 1286 (citing "lack of any connection with or interference with the bankruptcy case" as the second factor).  The documents and information contained in the Debtor Response are not property of the estate that could in any way benefit creditors, but instead are merely documents and data, much of which may be simply in the possession of the Debtor pursuant to its contracts with the Movants. *Cf. In*

---

[8] Factors 3, 4, 5, 6, 7, 8, 9, 10, and 11 are not applicable in this case.

re *Tognetti*, No. 03-37171, 2006 WL 2587544, at *12 (Bankr. S.D.N.Y. June 21, 2006) (lifting the stay to allow plaintiff to proceed with enforcement of a settlement stipulation in state court and finding that under *Sonnax* factor #2 there would be "no impact on [the] bankruptcy case" because any judgment would be imposed upon property that is likely not property of the bankruptcy estate). Thus, the relief requested herein does not "interfer[e] with" or "dimin[ish]" it or otherwise infringe in any way upon the Debtor's efforts to liquidate. *Teledyne Indus.*, 373 F. Supp. at 203.

25.    Consideration of the "impact of the stay on the parties and the balance of harms," also leads to the conclusion that the relief sought by the Motion is warranted. *See In re Sonnax*, 907 F.2d at 1286 (citing "impact of the stay on the parties and the balance of harms" as the twelfth factor). Should the Court not grant the relief sought by this Motion, the Movants face a substantial risk of irreparable harm because the Debtor Response will put the Movants' confidential business information at risk of public disclosure. By contrast, there is virtually no burden on the Debtor to produce the documents and information in the Debtor Response to the Movants' outside counsel. The Debtor has already agreed to gather the exact information requested here for the Multi-State Group and, depending on the delivery method, simply has to provide the Movants' outside counsel a duplicate copy or access to an established data room or share site. To the extent there are additional costs, the Movants are willing to bear any additional expense the Debtor may have so as to remove any burden on the Debtor. Further, granting the motion does not harm the Multi-State Group, which will still receive exactly the same information they bargained for in the Agreement without delay.[9] The balance of harms strongly favors granting this Motion.

---

[9] The Debtor has stated that granting the Movants' outside counsel the ability to review the materials produced to the Multi-State Group would likely "delay for weeks or months the Debtor's actual production to the Multi-State

26.     The foregoing factors establish cause for stay relief within the meaning of section 362(d)(1) of the Bankruptcy Code.

## II.     The Court Should Direct the Debtor, Pursuant to Section 105(a), to Produce the Documents and Information in the Debtor Response to the Movants.

27.     For an order granting stay relief to have the intended practical effect, the Debtor must be required to provide the Movants' outside counsel with an exact copy of the Debtor Response.   Authority to issue such an order comes from, at a minimum, Section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." *In re Lehman Bros. Holdings Inc.*, 591 B.R. 153, 158 (Bankr. S.D.N.Y. 2018) (citing 11 U.S.C. § 105(a)).

28.     While the Movants do not know at present what specific documents and information the Debtor intends to produce to the Multi-State Group pursuant to the Agreement, they believe that the production is highly likely to include their confidential information, the disclosure of which could substantially and irreparably harm the Movants and the conduct of the Movants' business.[10]   The Movants' information in the possession of the Debtor is confidential under the terms of their contracts with the Debtor.   The Debtor has confirmed that the Movants are correct, and that it intends to produce the Movants' confidential information to the Multi-State Group (Dkt. No. 175 at 4–5). Instead of denying this obvious fact, the Debtor contends that it is permitted under the applicable contracts to produce such confidential information to the

---

Group." (Dkt. No. 175 at 4). This is incorrect and misconstrues the relief the Movants seek.  The Movants are not asking that the Debtor delay production of the documents and information in the Debtor Response to the Multi-State Group while their outside counsel reviews the same.  Instead, they seek an order directing the Debtor to produce such documents and information *simultaneously* to the Multi-State Group and to their outside counsel, which can and should occur forthwith after this Motion is granted.  The Movants' outside counsel will provide the confidentiality designations to the Multi-State Group thereafter.

[10] Although the Movants do not have a copy of the CID, the July 16, 2019 hearing transcript indicates that the scope of the CID is broad, as it includes 14 interrogatories and 17 document requests.

Multi-State Group if the Court orders it to do so (*id.*).  The Movants agree that the Debtor may produce their confidential information to the Multi-State Group if ordered to do so by the Court. Here, of course, the Debtor has not been compelled to produce these documents against its will; instead, it has voluntarily entered into an agreement to produce them and is asking this Court to bless that agreement.  Regardless, the Movants are not asking the Court to refuse to issue an order approving the Agreement, but instead only ask that if the Court enters such an order, it also give the Movants the opportunity to protect their critical confidentiality interests by designating certain documents produced to the Multi-State Group as confidential.

29.    Without relief pursuant to Section 105(a) to complement the requested Section 362(d)(1) relief, the Movants face a substantial risk that their confidential and proprietary information will be improperly disseminated beyond the Multi-State Group.  According to the Agreement, the information produced to the Multi-State Group may be produced to any of the 36 states in that group, and will only be subject to protection from further disclosure, including to the public pursuant to public records requests, insofar as the states' variable public records laws permit withholding such information.  *See* Agreement (Dkt. No. 176-1) ¶ G.  The protections offered by those states' laws are uncertain and far from comprehensive—for example, as the Agreement states, "Connecticut law *may* . . . protect against the <u>disclosure to the public</u> of information obtained as part of an investigation . . . ."  *Id.* ¶ F (emphasis added).  In fact, Connecticut's freedom of information law does not automatically exempt records obtained pursuant to a non-criminal regulatory investigation from public disclosure.  *See* Conn. Gen. Stat. § 1-210(b)(3) (exempting from disclosure records "compiled in connection with the detection or investigation of *crime*") (emphasis added).  Instead, for such a record to be exempt from disclosure under Connecticut law, it must fit within certain categories defined by statute,

including "trade secrets" or "[c]ommercial or financial information given in confidence, not required by statute." *Id.* § 1-210(b)(5). In Massachusetts, one of the states with which documents may be shared under the Agreement, not even *trade secrets* are entitled to blanket protection—instead, trade secrets are only protected if the information is voluntarily provided upon a promise of confidentiality and for the purpose of developing governmental policy. Mass. Gen. Laws ch. 4, § 7(26)(g). And in numerous states, a document must be formally designated as "confidential" to receive protection as a trade secret or as commercial or business information. *See*, *e.g.*, 5 ILCS 140/7(1)(g) (Illinois statute extending protection to trade secrets and commercial or financial information only if such records "are furnished under a claim that they are proprietary, privileged or confidential"). The Movants here are simply seeking the opportunity to inform the Multi-State Group what information in the Debtor's production qualifies for protection from public disclosure under exemptions such as these.

30.      Giving the Movants the ability to provide such confidentiality designations to the Multi-State Group is critical for two reasons. First, the Movants are far better positioned to determine what information is confidential than the regulators in the Multi-State Group because the Movants understand what is proprietary, confidential, and/or commercially sensitive within their business that others outside the Movants cannot. This is why Attorney General Offices enter into confidentiality agreements as a standard practice with entities they seek documents from—agreements providing that the producing entity will make confidentiality designations on the documents produced to the Attorney General Offices. And because the Movants are market participants, they have a vested interest in ensuring such data remains protected in a way that others do not. Second, by making confidentiality designations, the Movants will ensure that the Multi-State Group (and any of the 36 State Attorney General Offices that may receive

confidential documents and information from the Debtor pursuant to the Agreement) is aware that the designated documents and information must be protected from disclosure, either by the applicable Attorney General's Office or by giving the designating Movant the opportunity to protect their confidentiality rights directly by exercising their rights under applicable state law. For instance, Indiana law provides that if a lawsuit is filed against a public agency seeking disclosure of public records, the agency shall notify each person who supplied any part of the public records at issue, and such persons are given the statutory right to intervene in the lawsuit to attempt to protect their interests.  Ind. Code 5-14-3-9(e).  If the Movants are denied the ability to make confidentiality designations, the members of the Multi-State Group may not realize that certain information provided to them by the Debtor was ultimately supplied by, and considered confidential by, a Movant.  In such a circumstance, the Movant would be effectively deprived of its right to intervene to maintain the confidentiality of such information in public records lawsuits such as those permitted under Indiana law.

31.    The Multi-State Group acknowledges that it would be proper for the Movants to receive a copy of at least *some* of the documents the Debtor anticipates producing (*see* Dkt. No. 176 ¶¶ 24–25), but suggests that the Movants should only receive the precise confidential documents and information (as incorporated into whatever documents the Debtor may have created that contained such confidential information) that each of them provided to the Debtor. There is simply no practical way for the Debtor to provide its production into such separate, tidy bundles.  If the Debtor had not filed this bankruptcy case and laid off more than three-quarters of its staff, it would have been expected to designate documents as confidential before producing them to the Multi-State Group, in coordination with the Movants.  As it stands, however, the Debtor admits that it "does not have the wherewithal to segregate all requested . . . information

16

on a (former) client-by-client basis." (Dkt. No. 175 at 4). Similarly, the Multi-State Group is not familiar enough with the Movants' documents, businesses, or unique processes to thoroughly and sufficiently identify what constitutes trade secrets, competitive information, sensitive pricing details, or other highly sensitive information. Therefore, providing the Movants with the documents that the Debtor produces to the Multi-State Group is the only practical means of assuring that the documents containing the Movants' confidential information are appropriately identified.

32.    Moreover, even the Debtor believes that its contracts with the Movants <u>do not</u> allow the Debtor to unilaterally disclose the Movants' confidential information absent Court order. (*Id.* at 4–5). The Debtor's voluntary agreement to produce such information to the Multi-State Group is in breach of the Debtor's contractual confidentiality obligations to the Movants. These contractual breaches could give rise to additional claims by the Movants against the Debtor's estate, which is already at risk of administrative insolvency. Thus, the Debtor's estate and all of its stakeholders have an interest in ensuring that the Debtor does not breach its contracts with the Movants by producing their confidential information without even so much as providing Movants an opportunity to identify what information the Debtor produces is confidential.

33.    In contrast, the Debtor and the Multi-State Group have identified no actual harm that would be caused by the Court granting the Movants' request for relief. As an initial matter, the Multi-State Group's response to the Movants' limited objection contends that production of these materials to the Movants would, in some unspecified way, "undercut" or "taint" the Multi-State Group's investigation of them (Dkt. No. 176 at 4, 12). But since the Movants' proposal would not affect in any way the documents that the Multi-State Group receives, it is difficult to

understand how providing a second copy of those documents to the Movants would undermine the Multi-State Group's ability to determine whether any laws have been violated, and if so, who is responsible.  Second, the Multi-State Group suggests that producing the information to the Movants' outside counsel pursuant to this Court's order could constitute a second data breach that could lead to additional liability for the Debtor (*id.* at 10).  But sensitive personal information is routinely disclosed to outside counsel pursuant to court orders and discovery requests in litigation, and those disclosures do not constitute data breaches or give rise to liability.  Here, the Movants seek exactly that—a Court order requiring the Debtor to provide the documents to the Movants' outside counsel (on an outside-counsel-eyes-only basis).  In addition, both of these concerns are substantially undercut by the fact that the Movants are also defendants in multi-district litigation concerning the data breach at the Debtor, and are thus entitled to issue a Rule 45 subpoena to the Debtor seeking the exact information that this motion seeks, and are entitled to file a lift-stay motion concerning the same.  In fact, the Movants anticipate bringing such a motion in the near future, so there is no harm in granting their limited request here. Finally, the Multi-State Group and the Debtor claim that there is no need for the Court to allow the Movants to conduct a confidentiality review, on the theory that the Multi-State Group has already agreed to protect the confidentiality of these documents.  But the Agreement only contains a vague statement that the 36 States that may receive documents produced by the Debtor "agree to afford those documents the highest level of protection against disclosure provided under their respective laws."  Dkt. No. 176-1 at 2.  As discussed above, however, certain States do not have the statutory authority to declare that all documents produced by the Debtor are exempt from disclosure.  Instead, only documents containing confidential information receive such protections.  If the State does not realize that a document contains confidential

18

information, it may well be foreclosed from protecting it from public disclosure. In this way, "the highest level of protection" available under state law may be no protection at all for highly confidential documents if the Movants are not given the opportunity to inform the Multi-State Group of their confidential status.

34.    The compelling interests of the Movants to protect confidential information, particularly when viewed against the non-existent burden to the Debtor, warrant relief under Section 105(a) in addition to Section 362(d)(1) relief. *See Sears, Roebuck & Co. v. Spivey*, 265 B.R. 357, 371 (E.D.N.Y. 2001) ("Section 105 of the Bankruptcy Code bestows on bankruptcy courts a specific equitable power to act in accordance with principles of justice and fairness."). The Court may exercise its discretion to provide relief under Section 105(a) unless "the exercise of discretion [under § 105] would contravene another section of the Bankruptcy Code." *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. 169, 201 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R. 358 (Bankr. S.D.N.Y. 2018). "Rather than being read as a directive, Section 105(a) is understood as providing courts with discretion to accommodate the unique facts of a case consistent with the policies or directives set by the other applicable substantive provisions of the Bankruptcy Code." *Id.*

35.    Section 105(a) does not authorize a Court to create substantive rights that are otherwise unavailable under applicable law, but it does authorize a Court to fashion a remedy which is necessary to preserve an identifiable right "inferred" in the Bankruptcy Code. *United States v. Sutton*, 786 F.2d 1305, 1307-08 (5th Cir. 1986); *In re Jamo*, 283 F.3d 392, 403 (1st Cir. 2002).

36.    In addition to the permissible use of Section 105(a) to effectuate the Section 362(d)(1) relief sought, several provisions of the Bankruptcy Code, while not directly applicable

here, evince a clear congressional intent to protect third parties from disclosure of their personal information.  *See* 11 U.S.C. §§ 107(b)-(c) (granting bankruptcy courts authority to prevent the disclosure of certain information in public filings), 332 (requiring appointment of consumer privacy ombudsman where sale would transfer personally identifiable information from a debtor to a purchaser).  In addition, section 333 of the Bankruptcy Code provides for the appointment of a patient care ombudsman in cases where the debtor is a healthcare business.  *See* 11 U.S.C. § 333.

37.    Similar concerns regarding the protection of confidential information exist here. While the Debtor is not a healthcare business whose bankruptcy implicates section 333, it maintains possession of the medical and related records of millions of patients.  Based upon the shared and clear intent of these Bankruptcy Code sections to protect confidential information, it is entirely appropriate for the Court to act pursuant to section 105(a) and fashion a remedy designed specifically to preserve an identifiable right "inferred" in the Bankruptcy Code.  *In re Jamo*, 283 F.3d at 403.

38.    Accordingly, the Court should exercise its discretion to "accommodate the unique facts of [this] case," and direct the Debtor, pursuant to section 105(a), to produce to the Movants' outside counsel <u>only</u> the exact information and documents included in the Debtor Response.  *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. at 201.

## III.    Bankruptcy Rule 2004 Provides Alternative Authority to Direct the Production of the Documents and Information in the Debtor Response to the Movants' Outside Counsel.

39.    Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a).  Bankruptcy Rule 2004(b) further provides that the scope of the examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or *to any matter which may*

*affect the administration of the debtor's estate*, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b) (emphasis added).

40.      A central purpose of Rule 2004 is "to assure the proper administration of bankruptcy estates." *In re Symington*, 209 B.R. 678, 683-84 (Bankr. D. Md. 1997). "[T]he inquiry may cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (Bankr. S.D.N.Y. 1984) (internal quotation marks and citation omitted); *see also In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 708-09 (Bankr. S.D.N.Y. 1991) (explaining that the intent of bankruptcy law in general—and Rule 2004 specifically—is to allow for an accurate and detailed insight into the affairs of the debtor's estate).

41.      Rule 2004 examinations are not limited to use by debtors and official committees. To the contrary, courts have recognized that creditors and other parties in interest may utilize Bankruptcy Rule 2004 in order to conduct a Rule 2004 examination, where appropriate. *See In re Lehman Bros. Inc.*, No. 08-01420, 2008 WL 5423214, at *2-3 (Bankr. S.D.N.Y. Nov. 26, 2008) (granting motion filed by individual creditors to conduct Rule 2004 examination). The Movants are, accordingly, proper movants in this case.

42.      Bankruptcy courts universally recognize that the scope of Rule 2004 examinations is broad, unfettered and can legitimately be in the nature of a "fishing expedition." *See St. Clair v. Cadles of Grassy Meadows II, L.L.C.*, 550 B.R. 655, 668 (E.D.N.Y. 2016); *In re Bakalis*, 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996); *In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 400 (Bankr. W.D. Pa. 2008); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) (citations omitted). The relief sought by the Movants pursuant to this Motion is, however, not a fishing expedition, but instead is targeted to seek only the documents and information

contained in the Debtor Response so that the Movants' outside counsel can conduct a confidentiality review.  Accordingly, the limited relief requested by the Movants is well within the scope of Rule 2004 and, relative to the importance of the information sought to both the Movants and the Debtor, the Movants' requests are restrained and not invasive.  As noted above, the Debtor has already agreed to gather the exact information requested here for the Multi-State Group and the Movants are willing to bear any additional expense the Debtor may have so as to remove any burden on the Debtor.

43.    Courts have broad discretion to grant relief under Rule 2004 where, as here, there is good cause.  *In re SunEdison, Inc.*, 572 B.R. 482, 489 (Bankr. S.D.N.Y. 2017).  Good cause for a Rule 2004 examination is shown "if denial of such request would cause the examiner undue hardship or injustice."  *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004) (quoting *In re Dinubilo*, 177 B.R. 932, 943 (E.D. Cal. 1993)).  While the Movants do not know what specific documents and information the Debtor intends to produce to the Multi-State Group pursuant to the Agreement, the Movants reasonably believe that the production is highly likely to include their confidential information—indeed, the Debtor has effectively admitted as much (Dkt. No. 175 at 4–5).  Without access to the Debtor Response, the Movants face a substantial risk that their confidential and proprietary information will be improperly disclosed to the public. *See supra* ¶¶ 28–29. Public disclosure of such confidential information would result in "undue hardship or injustice" to the Movants.  *In re Metiom, Inc.*, 318 B.R. at 268.

44.    Relief pursuant to Rule 2004 is appropriate notwithstanding the pending MDL litigation.  The existence of pending litigation involving the parties in another forum is not sufficient, standing alone, to preclude otherwise appropriate requests made pursuant to Rule

2004.[11]  Here, the Movants seek authority to issue a subpoena directing the Debtor to produce

only the exact information and documents included in the Debtor Response to the Movants'

outside counsel.  The purpose of this targeted and limited request is to allow the Movants to

protect their important and legitimate confidentiality concerns by identifying to the Multi-State

Group the confidential documents and information, not for use in other litigation.  This is

distinguishable from the discovery that the Movants intend to seek at a later date, pursuant to a

Federal Rule of Civil Procedure 45 subpoena with any necessary approval of this Court, for use

in the MDL litigation.  This request is therefore an appropriate use of Rule 2004.  *In re Wash.*

*Mut., Inc.*, 408 B.R. at 51 (discovery unrelated to pending proceeding is appropriate use of Rule

2004).

### IV.    Waiver of Bankruptcy Rule 4001(a)(3).

45.    The Movants also seek a waiver of any stay of the effectiveness of an order

granting this Motion.  Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for

relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the

expiration of 14 days after the entry of the order, unless the Court orders otherwise."  Fed. R.

Bankr. P. 4001(a)(3).  The Movants request that any order entered granting this Motion be

---

[11] The so-called "pending proceeding" rule is neither a *per se* prohibition on Rule 2004 relief where litigation is pending between the parties, nor a proper limitation on the availability of such relief with respect to issues that are unique to the bankruptcy case itself.  *See, e.g.*, *In re Int'l Fibercom, Inc.*, 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("[T]he court holds the ultimate discretion whether to permit the use of Rule 2004, and courts have for various reasons done so despite the existence of other pending litigation.").  Rather, the "rule" serves a much more limited purpose:  to ensure that litigants cannot circumvent the procedural safeguards and protections under the Federal Rules of Civil Procedure applicable to civil proceedings by taking advantage of the looser restrictions on discovery available in bankruptcy cases under Rule 2004.  *In re Glitner Banki HF*, No. 08-14757 (SMB), 2011 WL 3652764, at *4 (Bankr. S.D.N.Y. Aug. 19, 2011).  Acknowledging the limited purpose behind the "pending proceeding rule," courts have long noted that relief may be available under Rule 2004, notwithstanding pending litigation between the parties, where the party seeking such relief is not doing so for the prohibited purpose of furthering their own litigation position in the pending proceeding.  *See, e.g.*, *In re Wash. Mut., Inc.*, 408 B.R. 45, 51 (Bankr. D. Del. 2009) ("Discovery of evidence *related* to the pending proceeding must be accomplished in accord with more restrictive provisions of [the Federal Rules of Civil Procedure], while *unrelated* discovery should not be subject to those rules simply because there is an adversary proceeding pending." (emphasis and alterations in original) (quoting *In re Bennett Funding Grp., Inc.*, 203 B.R. 24,  29 (Bankr. N.D.N.Y. 1996))).

effective immediately so that the Movants may immediately take steps to secure their outside counsel's full access to the documents and information in the Debtor Response.  If such order does not become immediately effective, the Movants will be unnecessarily delayed from obtaining the documents and information in the Debtor Response, and commencing confidentiality review, for an additional 14 days.

## RESERVATION OF RIGHTS

46.    The Movants reserve all of their rights, remedies, and defenses in this chapter 11 case, including, but not limited to, all of their rights with respect to discovery on any matters.

## NO PRIOR REQUEST

47.    No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Movants respectfully request that this Court enter an order (1) pursuant to sections 105(a) and 362(d)(1) of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, directing the Debtor to produce to the Movants' outside counsel the documents and information contained in the Debtor Response and (2) granting such other and further relief as the Court deems just and proper.

Dated: October 30, 2019
New York, New York

Respectfully submitted,


*/s/  John D. Beck*
Christopher R. Donoho, III
John D. Beck
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100

Email: chris.donoho@hoganlovells.com
john.beck@hoganlovells.com

*Attorneys for Laboratory Corporation of America
Holdings and Laboratory Corporation of America*

/s/    William E. Curtin
Jessica C.K. Boelter (admitted *pro hac vice*)
William E. Curtin
**SIDLEY AUSTIN LLP**
787 Seventh Ave
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: jboelter@sidley.com
wcurtin@sidley.com

*Attorneys for Quest Diagnostics Incorporated*

/s/  William Hao
William Hao
**ALSTON & BIRD LLP**
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400
Email: william.hao@alston.com

-and-

William S. Sugden (admitted *pro hac vice*)
One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
(P) 404-881-7000
(F) 404-253-8235
Email: will.sugden@alston.com

*Attorneys for Optum360, LLC*

**Exhibit A**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | ) |
| | ) Case No. 19-23185 (RDD) |
| Debtor. | ) |
| | ) |

**ORDER GRANTINGING JOINT MOTION FOR AN ORDER, PURSUANT**
**TO 11 U.S.C. §§ 105 AND 362, DIRECTING THE DEBTOR TO**
**PRODUCE CERTAIN DOCUMENTS**

Upon the joint motion (the "**Motion**")[2] of Laboratory Corporation of America Holdings

and Laboratory Corporation of America, Quest Diagnostics Incorporated, and Optum360, LLC

(collectively, the "**Movants**"), for entry of an Order, pursuant to sections 105(a) and 362(d)(1) of

title 11 of the United States Code (the "**Bankruptcy Code**"), directing Retrieval-Masters

Creditors Bureau, Inc. dba American Medical Collection Agency (the "**Debtor**" or "**AMCA**") to

produce to the Movants' outside counsel the documents and information contained in the Debtor

Response to allow them to designate documents as confidential and, after due deliberation the

Court having concluded that the Movants have established sufficient cause for the relief granted

herein; and no additional notice being required except as specified herein; now, therefore, it is

hereby ORDERED that:

1.      The Debtor is authorized and directed, pursuant to sections 105(a) and 362(d)(1)

of the Bankruptcy Code, to produce to the Movants' outside counsel, not later than 3 business

days from entry of this Order, all information and documents (including electronically stored

information) included in the Debtor Response.

---

[1] The last four digits of the Debtor's taxpayer identification number is 9495.  The location of the Debtor's service address for the purpose of this chapter 11 case is 4 Westchester Plaza, Suite 110, Elmsford, NY 10523.  The Debtor also does business as American Medical Collection Agency.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2.      The Movants' outside counsel shall not share the information and documents with their clients absent further order of this Court.

3.      The Movants are prohibited from using or disclosing the information and documents produced pursuant to this Order for any purpose unrelated to the Multi-State Group's investigation of the Data Breach.

4.      At the conclusion of the Multi-State Group's investigation of the Data Breach, the Movants shall return to the Debtor or destroy all information and documents provided pursuant to this Order.

5.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: White Plains, New York
November __, 2019

_____
THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE