CHAPMAN AND CUTLER LLP
Steven Wilamowsky
1270 Avenue of the Americas
New York, NY 10020-1708
Telephone: 212.655.6000

-and-

Aaron M. Krieger
111 West Monroe Street
Chicago, IL 60603-4080
Telephone: 312.845.3000
*Counsel for the Debtor and
Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Retrieval-Masters Creditors Bureau, Inc.,[1] | : | Case No. 19-23185 (RDD) |
| | : | |
| Debtor. | : | |

---------------------------------------------------------x

**DEBTOR'S PRELIMINARY OBJECTION TO: (I) JOINT
MOTION OF LABORATORY CORPORATION OF AMERICA,
QUEST DIAGNOSTICS INCORPORATED AND OPTUM360, LLC
FOR AN ORDER, PURSUANT TO 11 U.S.C. §§ 105 AND 362,
DIRECTING THE DEBTOR TO PRODUCE CERTAIN
DOCUMENTS; AND (II) APPLICATION OF ELIZABETH
HOLLWAY FOR AN ORDER DIRECTING THE PRODUCTION
OF DOCUMENTS PURSUANT TO BANKRUPTCY RULE 2004**

Retrieval-Masters Creditors Bureau, Inc. (the "Debtor") as and for its preliminary

objection (this "Objection") to the: (I) *Joint Motion of Laboratory Corporation of America,*

*Quest Diagnostics Incorporated and Optum360, LLC for an Order, Pursuant to 11 U.S.C. §§*

*105 and 362, Directing the Debtor to Produce Certain Documents* [Doc. No. 180] (the "MDL

Defendants' Motion"); and the (II) *Application of Elizabeth Hollway for an Order Directing the*

---

[1] The last four digits of the Debtor's taxpayer identification number is 9495. As of November 1, 2019, the Debtor's service address for purposes of this chapter 11 case is 200 Pemberwick Road, Greenwich, CT 106831. The Debtor also has done business as American Medical Collection Agency.

*Production of Documents Pursuant to Bankruptcy Rule 2004* [Doc. No. 181] (the "<u>Hollway</u>

<u>Application</u>" and together with the MDL Defendants' Motion, the "<u>Production Motions</u>"),[2] by its

undersigned counsel, respectfully represents as follows:

## <u>Introduction</u>

Since shortly after the commencement of the Debtor's case, the Debtor and the Multi-

State Group have been engaged in the difficult and sometimes contentious task of arriving at a

negotiated procedure for providing information to the Multi-State Group to facilitate its

regulatory investigation into the data breach that led to the filing of the Debtor's chapter 11 case.

Circumstances required the parties to balance the Multi-State Group's desire for information

with the need to be sensitive to the severe financial and personnel constraints under which the

Debtor is operating.

The parties' efforts at a negotiated resolution ultimately were successful and, on

October 7, 2019, the Debtor filed the *Joint Motion to Adjourn Docket Numbers 3 and 52 Without

Date and Without Prejudice and Notice of Agreement Between Debtor and Multi-State Group*

[Doc. No. 153] (the "<u>Joint Motion</u>").  If granted, the Joint Motion will adjourn pending contested

matters involving the Debtor and the Multi-State Group and approve an agreement pursuant to

which the Debtor will provide responses to the civil investigative demands issued by the State of

Indiana in connection with the Multi-State Group's investigation into the Debtor's data breach

(such agreement, the "<u>Agreement</u>").

The MDL Defendants, all of whom are former clients of the Debtor currently subject to

putative class actions (the "<u>Multi-District Litigation</u>") overseen by the United States Judicial

Panel on Multidistrict Litigation (MDL No. 2904), and Ms. Hollway, a lead plaintiff in the

---

[2]      Capitalized terms not otherwise defined herein have the meanings ascribed to them by the applicable
Production Motions.

Multi-District Litigation, seek to interfere with the Agreement and use it as a means to end-run

the normal federal discovery rules to which they are subject in the Multi-District Litigation.

Indeed, the interference of the opposing parties in the Multi-District Litigation with the

negotiations between the Debtor and the Multi-State Group *already* have cost the Debtor and the

Multi-State Group nearly a full month of precious time, no small matter given the Debtor's

continually dwindling resources and the risk of further personnel attrition.  The Debtor therefore

requests that the Court firmly reject the Multi-District Litigation parties' attempt to hijack the

Joint Motion and tie it to the Production Motions.  Instead, the Court should schedule a hearing

to separately consider the Production Motions at the Debtor's monthly omnibus hearing,

scheduled for December 19, 2019, or at a later date as may be convenient to the Court.[3]

## **Preliminary Objection**

The MDL Defendants' Motion has not yet been scheduled for hearing.  The Hollway

Application includes an express joinder in the stay relief sought in the MDL Defendants' Motion

(Hollway Application at ¶25) and, accordingly, should be heard together with such motion.  The

Debtor therefore requests that both Production Motions be scheduled for consideration no earlier

than the Debtor's December 19, 2019 omnibus hearing date, with any objections to be due a

week earlier, on December 12, 2019.  During the intervening period, the Debtor also would be

open to discussions with the parties to the Multi-District Litigation, *not tied in any way to the*

*regulatory investigations or the Multi-State Group*, regarding specific and narrowly tailored

third-party discovery that the Debtor could provide to those parties on a stipulated basis, in an

---

[3]       As of the date hereof, no hearing date has yet been set for consideration of the MDL Defendants' Motion.
And *both* of the Production Motions seek some form of relief from the automatic stay which, pursuant to
paragraph 58 of the Case Management Order entered in the Debtor's case [Doc. No. 31], are to be heard no
earlier than 21 days after they are made.

effort to spare all parties and the Court the burden of discovery and automatic stay-related litigation.

Absent a consensual resolution, while the Debtor anticipates filing a more fulsome objection prior to the proposed hearing date for the Production Motions, it bears noting that the Production Motions have no merit and should not be granted for a variety of reasons, foremost of which is that the Hollway Application, and by extension the MDL Defendants' Motion as well, violate the longstanding and well-settled "pending proceeding rule." That rule, for present purposes, provides that once federal litigation has been commenced, discovery must proceed under the federal discovery rules. *See, e.g., In re Oklahoma Automatic Door, Co., Inc.,* 599 B.R. 167, 170 (Bankr. W.D. Okla. 2019) ("One recognized limitation on the broad scope of Rule 2004 is the 'pending proceeding rule,' pursuant to which courts may preclude discovery under Rule 2004 based on the 'existence of other pending litigation in which such discovery could be obtained.'") (citations omitted); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (acknowledging the "well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004.") (citations omitted); *2435 Plainsfield Ave. v. Township of Scotch Plains* (In re *2435 Plainsfield Ave.*), 223 B.R. 440, 455-56 (Bankr. D.N.J. 1998) (Rule 2004 examination prohibited while adversary proceeding pending).

Here the parties' own pleadings in the Multi-District Litigation effectively acknowledge the obvious, which is that the Production Motions here have nothing to do with the pursuit of the rights of creditors in the Debtor's chapter 11 case, or with any confidentiality concerns (those have been well-addressed by the Multi-State Group). Instead, the motions are all about obtaining discovery in the Multi-District Litigation. For example, in their "Joint Discovery Plan," filed in

the Multi-District Litigation on November 4, 2019 (2:19-md-02904-MCA-MAH in the United

States District Court of New Jersey) ("JDP") (a copy of which is annexed for convenience of

reference as Exhibit "A" hereto), the defendants correctly contend that "Plaintiffs' motion [*i.e.*,

the Hollway Application] is no substitute for obtaining discovery relevant to issues in this

litigation pursuant to a properly-issued subpoena."  JDP at fn 3.  The Plaintiffs, by the same

token, assert that "*as to discovery from third-party AMCA*, on October 30, Quest, Optum and

LabCorp filed a motion in the Bankruptcy Court to direct AMCA to produce to them the

documents that AMCA had agreed to produce to a consortium of 36 state attorneys general."

JDP, question 8(a) at page 10 (emphasis added).  The problem, of course, is that neither of the

Production Motions are appropriate vehicles for third-party discovery under the applicable

federal rules and, accordingly, should be denied.

### Conclusion

WHEREFORE, the Debtor respectfully requests that both Production Motions be

scheduled for consideration no earlier than the Debtor's December 19, 2019 omnibus hearing

date, with any objections to be due a week earlier, on December 12, 2019.  To the extent the

Court determines to consider the relief requested in the Production Motions at the Debtor's

*[Remainder of page intentionally left blank]*

November 14, 2019 omnibus hearing, the Debtor respectfully requests that the Court deny the

relief requested therein.

Dated:   November 11, 2019
         New York, New York

                              CHAPMAN AND CUTLER LLP
                              *Counsel for the Debtor and Debtor in Possession*

                              By:   /s/Steven Wilamowsky
                                    Steven Wilamowsky
                                    1270 Avenue of the Americas
                                    New York, NY 10020-1708
                                    Telephone: 212.655.6000

                                         -and-

                                    Aaron M. Krieger
                                    111 West Monroe Street
                                    Chicago, IL 60603-4080
                                    Telephone: 312.845.3000

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: AMERICAN MEDICAL COLLECTION AGENCY, INC. CUSTOMER DATA SECURITY BREACH LITIGATION | Civil Action No. 19-md-2904 (MCA)(MAH) <br><br> **JOINT DISCOVERY PLAN** |

1.     Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.

Counsel to Plaintiffs

James E. Cecchi
Lindsey H. Taylor
Caroline F. Bartlett
Mark M. Makhail
CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
Ph. 973-994-1700
Fax 973-994-1744

Christopher A. Seeger
Parvin Aminolroaya
Jennifer Scullion
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
Ph. 973-639-9100
Fax 973-584-9393

Norman E. Siegel
Barrett J. Vahle
J. Austin Moore
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
(816) 714-7100

Jason L. Lichtman
Sean A Petterson
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
Ph. 212-355-9500
Fax 212-355-9592

Linda P. Nussbaum
Bart D. Cohen
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, New York 10036
Ph. 917-438-9101

Stuart A. Davidson
Paul J. Geller
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida 33432
Ph. 561-750-3000
Fax 561-750-3364

Joseph J. DePalma
Bruce D. Greenberg
LITE DEPALMA GREENBERG LLC
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Ph. 973-623-3000
Fax 973-623-0858

Amy E. Keller
Adam J. Levitt
DICELLO LEVITT GUTZLER LLC
10 North Dearborn Street, 11th Floor
Chicago, Illinois 60602
Ph. 312-214-7900

Scott A. Bursor
Joseph I. Marchese
Philip L. Fraietta
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, New York 10019
Ph. 646-837-7142

E. Michelle Drake
BERGER & MONTAGUE
43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Ph. 612-594-5999
Fax 612-584- 4770

Jason T. Dennett
Kim D. Stephens
Cecily C. Shiel
TOUSLEY BRAIN STEPHENS, PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
Ph. 206-682-5600
Fax 206-682-2992

Timothy G. Blood
Thomas J. O'Reardon II
BLOOD HURST & O'REARDON, LLP
502 West Broadway, Suite 1490
San Diego, California 92101
Ph. 619-338-1101
Fax 619-338-1101

Tina Wolfson
Brad King
Theodore W. Maya
AHDOOT & WOLFSON, PC
1016 Palm Avenue
West Hollywood, California
Ph. 310-474-9111
Fax 310 474-8585

Jean S. Martin
John A. Yanchunis
MORGAN & MORGAN
76 South Laura Street, Suite 1100
Jacksonville, Florida 32202
Ph. 904-398-2722

Marc L. Godino
Lionel Z. Glancy
Danielle L. Manning
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California
Ph. 310-201-9150
Fax 310-432-1495

Joseph P. Guglielmo
SCOTT+SCOTT ATTORNEYS AT LAW, LLP
The Helmsley Building
230 Park Ave, 17th Floor
New York, New York 10169
Ph. 212-223-6444
Fax 212-223-6334

James Pizzirusso
HAUSFELD LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
Ph. 202-540-7200

Laurence D. King
Mario M. Choi
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Ph. 415-772-4700
Fax 415-772-4707

Todd S. Garber
Jeremiah Frei-Pearson
D. Greg Blankinship
Chantal Khalil
FINKELSTEIN, BLANKINSHIP, FREI-
PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Ph. 914-298-3281

Todd C. Werts
Bradford B. Lear
LEAR WERTS LLP
2003 West Broadway, Suite 107
Columbia, Missouri 65203
Ph. 573-875-1991
Fax 573-875-1985

J. Gerard Stranch
Joe P. Leniski, Jr.
BRANSTETTER STRANCH & JENNINGS, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Ph. 615-254-8801
Fax 615-225-5419

Counsel to Defendants Laboratory Corporation of America Holdings & Laboratory Corporation of America

Allison Holt Ryan
Alicia J. Paller
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
allison.holt-ryan@hoganlovells.com
alicia.paller@hoganlovells.com
Ph. (202) 637-5600
Fax (202) 637-5910

David Cooner
McCARTER & ENGLISH, LLP
100 Mulberry Street
Newark, NJ 07102
dcooner@mccarter.com
Ph. (973) 639-6971
Fax (973) 297-3960

Counsel to Defendants Optum360 Services, Inc., Optum360, LLC, Optum, Inc., and UnitedHealth Group Incorporated

Kristine McAlister Brown
Donald M. Houser
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

Telephone: (404) 881-7000
Facsimile: (404) 881-7777
kristy.brown@alston.com
donald.houser@alston.com

Reade W. Seligmann
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
Telephone: (212) 210-9453
Facsimile: (212) 210-9444
reade.seligmann@alston.com

Counsel to Quest Diagnostics Incorporated and Quest Diagnostics Clinical Laboratories, Inc.

David H. Hoffman
SIDLEY AUSTIN LLP
1 South Dearborn
Chicago, IL 60603
Telephone: (312) 853-2174
Facsimile: (312) 853-7036
david.hoffman@sidley.com

Eamon P. Joyce
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-8555
Facsimile: (212) 839-5599
ejoyce@sidley.com

Michael T. Hensley
BRESSLER AMERY & ROSS, P.C.
325 Columbia Turnpike
Suite 301
Florham Park, NJ 07932
Telephone: (212) 235-6436
Facsimile: (973) 514-1660
mhensley@bressler.com

Counsel to Defendants BioReference Laboratories, Inc.

Paul G. Karlsgodt
Edward J. Jacobs
Robyn M. Feldstein
Baker & Hostetler LLP

4

45 Rockefeller Plaza
New York, New York 10011
Ph. (212) 589-4200
Fax (212) 589-4201

Counsel to Defendants Sunrise Medical Laboratories, Inc., Clinical Pathology Laboratories, Inc.
and non-MDL Defendant CBL Path, Inc.

Bradley J. Bartolomeo
Jeffrey Y. Spiegel
LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, Suite 2100
New York, NY 10005
Telephone: (212) 232-1300
Facsimile: (212) 232-1399
bradley.bartolomeo@lewisbrisbois.com
jeffrey.spiegel@lewisbrisbois.com

Counsel to Defendant CareCentrix, Inc.

Lane W. Davis
William S. Brown
Greenville One, Suite 400
2 W. Washington Street
Greenville, S.C.
Telephone: (864) 373-2245
Facsimile (864) 373-2925
lane.davis@nelsonmullins.com
william.brown@nelsonmullins.com

Counsel to Defendant Inform Diagnostics, Inc.

Kevin M. McGinty
Evelyn Crystal Lopez
Grady R. Campion
MINTZ LEVIN COHN FERRIS GLOVSKY and POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
Facsimile: (617) 542-2241
kmcginty@mintz.com
eclopez@mintz.com
grcampion@mintz.com

2.   Set forth a brief description of the case, including the causes of action and defenses
     asserted.

**Plaintiffs' Summary of the Case**:

This action arises from a healthcare-related data breach, one that struck American Medical Collection Agency ("AMCA"), a billing-collection company that held the personal and medical information for patients of over 20 national and regional laboratories ("Defendant Laboratories"). AMCA served as the billing-collection arm for all of the Defendant Laboratories in this action. In the ordinary course of AMCA's collection activities on behalf of the Defendant Laboratories, the laboratories provided personal identifying information (such as dates of birth, social security numbers, home addresses, phone numbers, etc.), other sensitive information (such as credit card numbers, bank accounts, insurance information, balances owing, the names of referring physicians), as well as protected medical information (such as the dates of service and the laboratory tests performed) on behalf of the laboratories' patients for diagnostic services as far ranging as allergy and asthma testing, HIV testing, ovarian, breast, and other cancer screening, hepatitis C testing, and prenatal health screening. The Defendant Laboratories provided AMCA with all the aforementioned information under the mandated protection of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which obligated the Defendant Laboratories to ensure that all of their business associates receiving protected health information, like AMCA, had the necessary safeguards in place to protect such information from unauthorized disclosure.

For at least seven months (starting as early as August 1, 2018 and lasting until at least March 30, 2019), hackers infiltrated AMCA's database and accessed the personal identifying and medical information for at least 25 million of the Defendant Laboratories' patients. The first published disclosure of the on-going data breach was an announcement on February 28, 2019 by Gemini Advisory, a New York-based company that works with financial institutions to monitor the sale of consumer information on underground markets (colloquially known as the "Dark Web"), that approximately 200,000 Quest patient records had been accessed and that the customer records, exposed as early as September 2018, were available for sale. Notwithstanding their obligation under various state and federal statutes and regulations to promptly notify their clients that their personal and medical information may have been accessed and compromised, the Defendant Laboratories waited months to publicly disclose the data breach.

Plaintiffs intend to file master consolidated complaints for each of the three proposed tracks. The claims will include negligence, violation of state consumer protection and data-protection and notification statutes, breach of implied contract, breach of express contract, unjust enrichment, breach of fiduciary duty, and invasion of privacy.

**Defendants' Summary of the Case**[1]:

      This multidistrict litigation arose following a cyberattack perpetrated on AMCA, a medical collections vendor. Beginning on May 14, 2019, AMCA notified its customers, including Defendants Laboratory Corporation of America Holdings and Laboratory Corporation of America (collectively, "LabCorp"), Quest Diagnostics Incorporated ("Quest"), Optum360, LLC ("Optum360"), BioReference Laboratories, Inc. Inc. ("BioReference"), CareCentrix Incorporated ("CareCentrix"), Inform Diagnostics, Inc. ("Inform Diagnostics"), Clinical Pathology Laboratories, Inc. ("Clinical Pathology"), Sunrise Medical Laboratories ("Sunrise") (collectively, but excluding AMCA, "Defendants" or "non-AMCA Defendants"), that AMCA may have experienced unauthorized activity on its web payment page. According to AMCA, between August 1, 2018 and March 30, 2019, an unauthorized user had access to an AMCA system.

      The non-AMCA Defendants in this litigation did not suffer a cyberattack. They are entities that had business relationships with AMCA. Many of the non-AMCA Defendants provide clinical laboratory and diagnostic services through their facilities and specialty labs across the country. These Defendants utilized AMCA to provide collection services. None of Defendants' computer systems were compromised in the AMCA attack. The incident occurred solely at AMCA. Immediately upon learning of the attack on AMCA, Defendants deployed significant resources to investigate the incident, obtain additional information from AMCA, and, in certain instances, notify individuals whose information may have been impacted, including providing toll-free numbers those individuals could call for additional information and offering credit monitoring and identity theft protection services to those individuals. Several Defendants made public disclosures of the AMCA incident, including by alerting the media and by prominently posting information on their websites, to provide the public with information even as their investigations were ongoing. All Defendants have ceased using AMCA for collection requests.

      Following the incident, Plaintiffs filed suits across the country against both AMCA and Defendants. Shortly thereafter, on June 17, 2019, AMCA filed for bankruptcy, and Plaintiffs focused their efforts on the non-AMCA Defendants, despite the fact that the incident did not involve any of the non-AMCA Defendants' systems. Plaintiffs' complaints plead a wide variety of state-law causes of action, primarily alleging negligence, breach of implied contract, and state statutory consumer protection claims.

      None of the Plaintiffs has alleged an injury sufficient to confer Article III standing in the complaints filed thus far. Rather, the complaints plead the type of unrealized risks of future injury that the Third Circuit and other courts have rejected. Beyond this fundamental jurisdictional infirmity, Plaintiffs have failed to state a claim sufficient to survive the motions under Federal Rule of Civil Procedure 12(b)(6) that Defendants anticipate filing. Should Plaintiffs survive motions to dismiss, individual issues predominate over common ones, among other Rule 23 failings, such that a classes cannot be certified. For example, information security standards have

---

[1] Defendants vigorously deny the many inaccurate factual and legal assertions in Plaintiffs' summary of the case. Given the posture of this proceeding, Defendants do not seek to rebut each of Plaintiffs' inaccurate statements, here, and will do so at the appropriate time.

changed over the class period affecting Plaintiffs differently depending on the time they provided their information to AMCA and Defendants. What's more, the personally identifying information ("PII") of numerous Plaintiffs likely has been exposed through their voluntary disclosures of that information directly to AMCA and prior breaches, such that those Plaintiffs cannot prove causation. This is only the tip of the iceberg of how Plaintiffs' proposed classes splinter across the requirements of Rule 23.

At bottom, Plaintiffs have focused their claims not against the entity that actually experienced a cyberattack, but instead against Defendants, who are at least one step removed and whose systems were not impacted by the incident. This novel and attenuated approach cannot be sustained under controlling precedent.

3.  Have settlement discussions taken place?  Yes_____No ____X____

    (a)  What was plaintiffs' last demand?

        (1)  Monetary demand: $ _____
        (2)  Non-monetary demand: _____

    (b)  What was defendants' last offer?

        (1)  Monetary offer:  $ _____
        (2)  Non-monetary offer: _____

4.  The parties [have____X____, have not _____ ] met pursuant to Fed. R. Civ. P. 26(f).

**Rule 26(f) Conference**

Pursuant to Federal Rule of Civil Procedure 26(f), the parties held a conference on October 21, 2019.  The conference took place at McCarter & English LLP, Four Gateway Center, 100 Mulberry Street, Newark, New Jersey 07102.  The conference was attended by the following individuals:

| For Plaintiffs | For Defendants |
|---|---|
| Lindsey H. Taylor | David Cooner (LabCorp counsel) |
| Caroline Bartlett | Allison Ryan (LabCorp counsel) |
| Dave Buchanan | Donald Houser (Optum360 counsel) |
| Parvin Aminolroaya | Kristy Brown (Optum360 counsel) |
| Caleb Seeley | Reade Seligmann (Optum360 counsel) |
| Doug Forrest (Plaintiffs' ESI consultant) | David H. Hoffman (Quest counsel) |
| Joseph Guglielmo | Daniel Craig (Quest counsel) |
| Stuart Davidson | Clayton Northouse (Quest counsel) |
| | Michael Hensley (Quest counsel) |
| | Kevin M. McGinty (Inform Diagnostics counsel) |
| | Bradley J. Bartolomeo (Sunrise Medical & |

|  | Clinical Pathology Labs counsel) |
|  | Jeffrey Y. Spiegel (Sunrise Medical & Clinical Pathology Labs counsel) |
|  | Edward Jacobs (BioReference counsel) |
|  | Lane Davis (CareCentrix) |

At the conference, the parties discussed, among other things: (1) process and substance of discovery of AMCA; (2) the information systems where the parties' potentially discoverable electronic documents are stored; (3) preservation obligations; (4) a confidentiality agreement; (5) an ESI protocol; (6) party discovery and timing thereof; and (7) the identification of an ESI discovery facilitator as required by Local Civil Rule 26.1(d).

In advance of the conference, the parties exchanged a draft confidentiality order, and the Plaintiffs provided Defendants with an ESI protocol, Rule 34 requests for discussion purposes, and thirty information requests on discovery and related issues including preservation.

The Parties have continued to meet and confer pursuant to Federal Rule of Civil Procedure 26(f) by electronic mail and telephone through the date of this filing. The Parties have agreed upon a Confidentiality Order to submit to the Court, and are discussing revisions to a proposed ESI Protocol.

5.     The parties [have _____ , have not __X___] exchanged the information required by Fed. R. Civ. P. 26(a)(1). If not, state the reason therefor.

Plaintiffs' Position:

Plaintiffs suggest that the parties exchange initial disclosures by November 20, 2019.

Defendants' Position:

Defendants believe initial disclosures should be due 30 days following any denial of their motions to dismiss.  Plaintiffs will file their consolidated complaints on Friday, November 15, 2019.  Their demand that Defendants serve initial disclosures just three business days later is unreasonable, as is any suggestion that Defendants should be forced to base their initial disclosures on guesses as to what Plaintiffs will allege in their consolidated complaints. For the reasons set forth in response to item 8(a) below, party discovery, including initial disclosures, should be stayed pending resolution of the motions to dismiss, which will raise strong jurisdictional challenges.  In addition, even if Defendants' motions are denied in part, the Court's ruling may eliminate certain claims, which would allow the parties to serve more targeted and relevant disclosures.

6.     Explain any problems in connection with completing the disclosures required by Fed R. Civ. P. 26(a)(1).

- Defendants' Position: See statement in response to Item 5, above.

7.     The parties [have_____, have not _X_] conducted discovery other than the above disclosures. If so, describe.

8.     Proposed joint discovery plan:

    (a)     Discovery is needed on the following subjects:

Plaintiffs' position:

      With regard to party discovery, Plaintiffs believe that party discovery is appropriate at this time.  To that end, Plaintiffs sent Rule 34 requests for discussion purposes to Defendants six days prior to the Rule 26 conference and at the Rule 26 conference identified categories of information for prioritized production, including: (1) contracts with AMCA, (2) audits of AMCA's data security; (3) internal investigations regarding the data breach; (4) information regarding all data transfer between Defendants and AMCA; (5) network security protocols; and (6) network security audits.  Plaintiffs also proposed that each Defendant identify one to two custodians who were in charge of the investigation into the data breach for prioritized custodial collection. Plaintiffs propose that this prioritized discovery be produced by Defendants within 30 days of the filing of the Joint Discovery Plan. As to remaining discovery sought by Plaintiffs' Rule 34 Requests, Plaintiffs propose that substantial completion of discovery responsive to those Requests be made by February 6, 2019.

      As to discovery from third-party AMCA, on October 30, Quest, Optum and LabCorp filed a motion in the Bankruptcy Court to direct AMCA to produce to them the documents that AMCA had agreed to produce to a consortium of 36 state attorneys general.  On October 31, Plaintiffs filed a separate motion under a different section of the Bankruptcy Code seeking the same relief.[2] At present, only AMCA, the state attorneys general and the Bankruptcy Court know what documents AMCA has agreed to produce, but inasmuch as that document production is likely to overlap  in some, but not all, respects, Plaintiffs believe that the appropriate approach is to see what documents the parties receive pursuant to the pending motions in the Bankruptcy Court before proceeding with any additional discovery from AMCA. To the extent that Defendants seek additional discovery from AMCA, Defendants are free to pursue that through an additional subpoena to AMCA.

Defendants' position:

      The Parties agree that discovery from AMCA should go forward during the pendency of Defendants' anticipated motions to dismiss, to the extent allowed by the bankruptcy court presiding over the AMCA bankruptcy.  Discovery of AMCA should move forward quickly because AMCA, the entity at which the data incident occurred, is the sole direct source of information concerning the circumstances and details of the incident.

---

[2]     Since Plaintiffs motion is not seeking to enforce its prior subpoena, Defendants' complaints relating to any alleged procedural defects in the subpoena are moot.

Party discovery should be stayed until the Court rules on Defendants' anticipated motions to dismiss for two primary reasons. First, as explained above, none of the Plaintiffs has alleged an injury sufficient to confer Article III standing, among other pleading deficiencies. Defendants anticipate moving to dismiss the consolidated complaints on standing and other grounds. Discovery of the parties should be stayed until these motions are decided because they relate to the Court's subject matter jurisdiction and, if granted, may resolve this matter in its entirety.

Second, putting AMCA discovery first is critical to the efficient management of discovery in this MDL. AMCA is not just a miscellaneous third party; it is *the* entity that suffered the data incident and is therefore the only source of information concerning the details of the data incident that gives rise to this MDL. Indeed, many of Plaintiffs' complaints named AMCA as a defendant before AMCA filed for bankruptcy. Sequencing AMCA discovery to go first will allow the Parties to understand the data incident and, in turn, focus party discovery on relevant issues and avoid irrelevant issues. The benefits to sequencing are not hypothetical. Plaintiffs seek wide-ranging and extremely burdensome discovery regarding, among other things, the security of all of *Defendants' systems* – even though the incident occurred exclusively at AMCA and had no connection whatsoever to the security of Defendants' own systems. At the Rule 26(f) conference, Plaintiffs explained that they believed such discovery necessary because they do not know how the AMCA data incident occurred and, in essence, could not rule out the possibility that Defendants' systems were somehow involved. While there is no basis for that hypothetical possibility, sequencing AMCA discovery first will allow the Parties to avoid wasting time and resources on such speculative fishing expeditions by showing *how* the AMCA incident occurred, and removing the need for discovery as to topics and systems with no connection whatsoever to the incident giving rise to all of the claims in this case.

As to the procedures by which discovery from AMCA could be obtained, Defendants have consistently advocated a coordinated approach, while Plaintiffs have shifted between three positions. Initially, Plaintiffs represented to the Court that they agreed with Defendants that it would be useful and efficient to jointly pursue discovery from AMCA while motions to dismiss were pending. *See* ECF No. 63. In accordance with this apparent agreement, Defendants proposed filing a joint lift-stay motion and subpoenas pursuant to Federal Rule of Civil Procedure 45. For reasons that they have not articulated to Defendants, Plaintiffs thereafter changed positions and are no longer willing to jointly pursue discovery of AMCA with Defendants.

During the Rule 26(f) conference on October 21, 2019, and again on October 29, 2019, Plaintiffs represented to Defendants that they wished to pursue a subpoena they served on AMCA in the pending bankruptcy on August 28, 2019 instead of proceeding in a coordinated fashion with Defendants. That approach is problematic because that subpoena failed to comply with relevant procedures in numerous respects. First, Plaintiffs failed to serve a copy of the subpoena on the Defendants, despite the subpoena being issued pursuant to Federal Rule of Civil Procedure 45. A subpoena commanding the production of documents "must be served on each party" before it is served on the person to whom it is directed, Fed. R. Civ. P. 45(a)(4), and Plaintiffs failed to do so. Plaintiffs also failed to serve the subpoena on the other parties in the bankruptcy proceeding. Instead, they provided a copy of the subpoena only after Defendants requested it at the Rule 26(f) conference on October 21, 2019. Second, serving the subpoena in the AMCA bankruptcy proceeding was improper under the bankruptcy rules because there is no pending adversarial

proceeding or contested matter between Plaintiffs and AMCA in the bankruptcy court, and it is clear that Plaintiffs' subpoena seeks documents for use in this proceeding rather than for use in the bankruptcy court. We also note that, pursuant to 11 U.S.C. § 362(a)(1), all litigation against AMCA was stayed upon AMCA's filing for bankruptcy, and a motion for relief from the automatic stay in the bankruptcy proceeding must precede any discovery requests directed at AMCA. Plaintiffs did not file such a motion prior to serving the subpoena on AMCA.[3]

On November 4, 2019, just hours before the filing of this joint report, Plaintiffs changed positions again, stating for the first time that they believed that the motion they filed in the bankruptcy court on October 31 seeking a copy of the documents that AMCA has agreed to produce to certain states' Attorneys General should be the extent of AMCA discovery at this time.[4] But as Plaintiffs admit, they *do not even know* what documents AMCA has agreed to produce to the Attorneys General, and of course there is no guarantee that their motion will be granted. Even if it is, there is no reason to think that obtaining such documents will allow the parties to focus party discovery on issues of potential relevance. Plaintiffs should not be permitted to pursue extensive party discovery before obtaining AMCA discovery that is actually intended to identify the scope of potentially relevant issues.

Defendants believe that the Parties should coordinate their efforts to obtain discovery from AMCA to ensure that the documents requested from AMCA will be sufficient to provide clarity on the core issues in this case. Coordination will give the Parties the best chance at successfully obtaining such discovery, including because law firms retained as Defendants' outside counsel have long experience practicing before the bankruptcy courts and can use such experience to improve the odds of success. Defendants continue to believe that coordination is the best approach, but if Plaintiffs will not cooperate, Defendants stand ready to seek discovery of AMCA for use in this action as expeditiously as possible.

---

[3] On October 31, 2019, Plaintiffs filed a limited lift-stay motion seeking the production of documents responsive to the subpoena that AMCA has separately agreed to produce to certain states' Attorneys General who are conducting an investigation. The motion does not cure the procedural defects in Plaintiffs' subpoena, including because it was filed after the subpoena was served on AMCA, and not before. Moreover, the Parties do not know the categories of documents that AMCA has agreed to produce to the Attorneys General, so Plaintiffs' motion is no substitute for obtaining discovery relevant to issues in this litigation pursuant to a properly-issued subpoena.

[4] Certain Defendants filed a lift-stay motion with the bankruptcy court on October 30, 2019 seeking an order requiring AMCA to produce those same documents to such Defendants. However, as that motion made clear, their purpose in filing the motion was to allow them to conduct a confidentiality review and provide the appropriate confidentiality designations to the Attorneys General receiving documents from AMCA. That motion was not for the purpose of discovery in this litigation; in fact, the motion made clear that the movants *would not use* the documents received in this litigation and that they anticipated returning to the bankruptcy court with a later lift-stay motion seeking documents for use in this case.

Defendants are working diligently with Plaintiffs to negotiate an ESI Protocol, and have agreed with Plaintiffs regarding a Confidentiality Order, so that Party discovery can proceed quickly and efficiently if and when the timing is appropriate.

Defendants believe that if this matter proceeds to discovery, appropriate topics of discovery include the following:

1. The AMCA data incident;
2. Plaintiffs' dealings or interactions with Defendants, if any, including without limitation any alleged representations by any Defendants to Plaintiffs;
3. Plaintiffs' alleged injury, harm, risk, loss, and damages, including without limitation information relating to standing and any alleged measures to monitor, mitigate, or protect against any alleged injury, risk, harm, loss, or damages;
4. Issues relating to causation between the AMCA data incident and Plaintiffs' alleged injury, harm, risk, loss, and/or damages;
5. Issues relating to class certification, including Plaintiffs' ability to meet the requirements for class certification, including those in Federal Rule of Civil Procedure 23; and
6. Defenses and affirmative defenses (which will be asserted at the appropriate time).

   (b)     Discovery [should_____ should not _____] be conducted in phases or be limited to particular issues.  Explain.

<u>Plaintiffs' position:</u>

Plaintiffs believe that document discovery should take place prior to a decision with respect to Defendants' motions to dismiss.  Those documents would include Defendants' contracts with AMCA, and any other requirements that AMCA undertake relating to data security, Defendants' investigations, if any, into AMCA's data security measures, whether before or after the data breach, and communications between Defendants and AMCA with respect to the data breach.

<u>Defendants' position:</u>

As described above, a stay of party discovery pending the motions to dismiss is necessary and appropriate because critical jurisdictional challenges will be presented in those motions and this sequencing will make any party discovery far more efficient.  To the extent party discovery moves forward, Defendants believe there should be a fact discovery period.  At the end of the fact discovery period, a limited expert discovery period should follow.

   (c)     Proposed schedule:

        (1)     Fed. R. Civ. P. 26 Disclosures _____.

<u>Plaintiffs' position</u>: November 20, 2019.

<u>Defendants' position</u>: For each track, 30 days following any denial of Defendants' motions to dismiss.

        (2)      E-Discovery conference pursuant to L. Civ. R. 26.1(d)  <u>October 21, 2019</u> .

        (3)      Service of initial written discovery <u>           </u>.

<u>Plaintiffs' position</u>: Rule 34 Requests sent to Quest on October 15, 2019.

<u>Defendants' position</u>: Any discovery requests should be deemed served as of the date of any denial of Defendants' motions to dismiss, for each track. Plaintiffs did not serve Rule 34 requests on Quest on October 15, 2019. Plaintiffs provided a document styled as Rule 34 requests directed to Quest on October 15, 2019 in advance of the Rule 26(f) conference. However, as Plaintiffs stated during the Rule 26(f) conference, and confirm in this joint statement, that document was for discussion purposes. It does not constitute actual pending requests. There is no deadline at present for Quest to respond to that document.

        (4)      Maximum of <u>  25  </u> interrogatories served upon each Party, including subparts.

        (5)      Maximum of <u>     </u> factual depositions to be taken of each defendant, excluding non-party depositions.

<u>Plaintiffs' position</u>: 25.

<u>Defendants' position</u>: The parties should meet and confer on the appropriate number of fact depositions to be taken of each defendant after Rule 26(a) disclosures are served. The number may vary by Defendant. In addition, each named Plaintiff may be deposed.

        (6)      Motions to amend or to add parties to be filed by <u>a date to be determined following any denial of Defendants' motions to dismiss.</u>[5]

        (7)      Factual discovery to be completed by <u>a date to be determined following any denial of Defendants' motions to dismiss.</u>

        (8)      Plaintiffs' expert reports due on <u>a date to be determined following any denial of Defendants' motions to dismiss.</u>

        (9)      Defendants' expert reports due on <u>a date to be determined following any denial of Defendants' motions to dismiss.</u>

---

[5]    For each track, within 14 days of a decision on Defendants' motion to dismiss, the Parties will submit a proposal for the remainder of the schedule.

     (10)    Expert depositions to be completed by <u>a date to be determined following any denial of Defendants' motions to dismiss</u>.

     (11)    Class certification motions filed by <u>a date to be determined following any denial of Defendants' motions to dismiss</u>.

     (12)    Dispositive motions to be served within ____ days of completion of discovery.

<u>Plaintiffs' position</u>: within 30 days of completion of discovery.

<u>Defendants' position</u>: 45 days following a ruling on class certification.

     (d)    Set forth any special discovery mechanism or procedure requested.

            None at this time.

     (e)    A pretrial conference may take place on <u>as set by the Court</u>.

     (f)    Trial date:<u> as set by the Court. (__X__</u> Jury Trial; __ Non-Jury Trial).

9.    Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? Yes _____ No __X__. If so, please explain.

    Any special discovery needs can be addressed after the motions to dismiss are decided. The Parties anticipate that certain depositions will be videotaped.

10.    Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced? Yes ____ No __X__.

    If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.

<u>Plaintiffs' position</u>:

    The parties are discussing an ESI protocol. One issue that has arisen is that Defendants object to producing documents responsive to a request for production that they know to exist but does not hit on a search methodology. Other than that, Plaintiffs believe that none of the issues set forth in Defendants' position are ripe for bringing to the attention of the Court. Plaintiffs sent the draft ESI Protocol to Defendants on October 11. While the parties discussed some of Defendants' issues at the Rule 26(f) meeting on October 21, Defendants did not provide comments to the draft ESI protocol until after 4 p.m. on November 1. As of the filing of the Joint Discovery

Plan, the parties discussions relating to the ESI protocol are ongoing and they will bring any unresolved disputes to the Court's attention at the appropriate time.

<u>Defendants' position</u>:

The Parties are engaged in ongoing discussions regarding the ESI protocol and Defendants are hopeful that the parties will be able to negotiate a protocol without involving the Court. As an initial matter, Plaintiffs appear to take the position that the ESI Protocol does not apply to them. Plaintiffs also have asked that the protocol include a vague and ambiguous requirement that any responsive document that the Defendants (which are corporations with hundreds or thousands of employees) know to exist must be produced to Plaintiffs even if the negotiated search protocols do not uncover that document. Such a requirement is unreasonable and would undermine the purpose of negotiating agreed search protocols because it would expose Defendants to accusations of discovery misconduct if any of their employees were somehow aware of a document that the protocols do not reveal. Plaintiffs have proposed similar unreasonable positions including that the Parties may not use deduplication to reduce the volume of documents produced, which would lead to the production of the same documents many times. This would be a waste of the Parties' resources and would not confer any benefit. Defendants are committed to negotiating these and the other remaining points of dispute with Plaintiffs and will raise any issues as to which the parties reach an impasse with the Court at an appropriate time.

11.     Do you anticipate entry of a Discovery Confidentiality Order? <u>See</u> L.Civ.R. 5.3(b) and Appendix S.

        Yes.

12.     Do you anticipate any discovery problem(s) not listed above?
        Yes _____ No ___X___.

        Not at this time.

13.     State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise). If not, explain why and state whether any such procedure may be appropriate at a later time (<u>i.e.</u>, after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).

        Not at this time, but mediation may be appropriate at a later date.

14.     Is this case appropriate for bifurcation? Yes_____ No _X___

15.     An interim status/settlement conference (with clients in attendance), should be held in ___ _____ to be determined _____.

16.     We [do _____ do not __X__] consent to the trial being conducted by a Magistrate Judge

16

17.     Identify any other issues to address at the Rule 16 Scheduling Conference.


CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
*Interim Lead Counsel for Plaintiffs*


By:___/s/ James E. Cecchi_____
          JAMES E. CECCHI

McCARTER & ENGLISH, LLP
*Attorneys for Laboratory Corporation of
America Holdings and Laboratory Corporation
of America*


By:___/s/ David Cooner_____
          DAVID COONER

BAKER HOSTETLER
*Attorneys for Defendant BioReference
Laboratories, Inc.*


By:___/s/ Paul G. Karlsgodt_____
          PAUL G. KARLSGODT

ALSTON & BIRD LLP
*Attorneys for Defendants Optum360 Services,
Inc., Optum360, LLC, Optum, Inc., and
UnitedHealth Group Incorporated*


By:___/s/ Reade W. Seligmann_____
          READE W. SELIGMANN

SIDLEY AUSTIN LLP
*Attorneys for Defendants Quest Diagnostics
Incorporated and Quest Diagnostics Clinical
Laboratories, Inc.*


By:___/s/ David H. Hoffman_____
          DAVID H. HOFFMAN

NELSON MULLINS RILEY &
SCARBOROUGH, LLP
*Attorneys for CareCentrix, Inc.*


By:___/s/ Lane W. Davis_____
          LANE W. DAVIS

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.
*Attorneys for Defendant Inform Diagnostics,*
*Inc.*

By: ___/s/ Kevin M. McGinty_____
      KEVIN M. MCGINTY

LEWIS BRISBOIS BISGAARD & SMITH
LLP
*Attorneys for Defendants Sunrise Medical*
*Laboratories, Inc., Clinical Pathology*
*Laboratories, Inc. and non-MDL Defendant*
*CBL Path, Inc.*

By:___/s/ Bradley Bartolomeo_____
      BRADLEY BARTOLOMEO